Emmett V. KENEFICK, Amelia M. Kenefick, and Emmir, Inc., a Wisconsin corporation, Plaintiffs,

v.

David W. HITCHCOCK, Carolyn D. Hitchcock, d/b/a Hitchcock's Phillips 66 Service Center, Defendants-Third Party Plaintiffs-Appellants,

PHILLIPS PETROLEUM COMPANY, a foreign corporation, Defendant,

FEDERATED MUTUAL INSURANCE COMPANY, Third Party Defendant-Respondent.

Court of Appeals

*No. 93–2318. Submitted on briefs June 8, 1994.—Decided August 25, 1994.*

(Also reported in 522 N.W.2d 261.)

For the defendants-third party plaintiffs-appellants the cause was submitted on the briefs of *Russell M. Lein* and *K. Scott Wagner* of *Hale & Lein, S.C.,* of Milwaukee.

For the third party defendant-respondent the cause was submitted on the brief of *Rodger A. Hagen, William M. Hart, Laura J. Hanson* and *Thomas E. Propson* of *Meagher & Geer* of Minneapolis, Minnesota.

For Amicus Curiae Insurance Environmental Litigation Association the cause was submitted on the brief of *Robert Burrell* of *Borgelt, Powell, Peterson & Frauen* of Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J. David and Carolyn Hitchcock appeal from an order granting summary judgment dismissing their third-party complaint against Federated Mutual Insurance Company. The Hitchcocks, owners of a service station, were sued by Emmett and Amelia Kenefick, who owned property adjacent to the station and claimed that leakage from the Hitchcocks' underground gasoline storage tanks contaminated area groundwater, causing them damage.

The Hitchcocks contended that their liability for any such damage was covered by two insurance policies issued by Federated: a liability policy effective from March 15, 1985, to March 15, 1986, and a "claims-made" pollution damage policy effective from March 15, 1986, through March 15, 1987. Claiming that Federated improperly declined to defend them in this action, the Hitchcocks filed a third-party action against the company. The parties entered into a stipulation bifurcating the coverage and liability issues, and Federated moved for summary judgment dismissing the

Hitchcocks' third-party complaint on grounds that the Federated policies afforded them no coverage. The trial court granted the motion and the Hitchcocks appeal.

The issues are: (1) whether the trial court erred in concluding that there was no coverage under Federated's liability policy because the leakage did not occur within the policy period; (2) whether the asserted knowledge on the part of a Federated agent that a leak existed in the storage tanks was sufficient to comply with the notice provisions of Federated's "claims-made" policy; and (3) whether Federated otherwise breached its duty to defend the Hitchcocks in the action or, in the alternative, should be estopped from challenging coverage.

We conclude that the Hitchcocks are not covered by either policy, and that Federated is not estopped from challenging coverage. We also conclude, however, that the Hitchcocks may seek recovery of their expenses in defending the liability and damage portions of the action up to the time those proceedings were stayed pending resolution of the coverage issues. We thus reverse the order on that limited point and affirm in all other respects.

The service station, which has been owned and operated by the Hitchcocks since 1974, was built over two large underground gasoline storage tanks. Prior to 1982, the contents of the tanks were monitored only intermittently. In that year, the Hitchcocks began taking "stick inventories" of the tanks' contents twice a week and, beginning in 1985, did so nearly on a daily basis. The information thus gained was compared with gasoline purchase invoices and retail sales figures two to four times a month in order to determine the station's gasoline inventory. When the Hitchcocks' bookkeeper received the May 1986 invoice from the

gasoline supplier, she noticed a discrepancy in that there appeared to be less gasoline in the storage tanks than there should have been. The Hitchcocks hired an excavator and discovered a hole in a pipe leading from one of the tanks. It was estimated at the time that approximately 1,000 gallons of gasoline were "missing." The pipe was immediately repaired.

In early 1990, the Hitchcocks replaced the two underground tanks. Soil tests taken at the time revealed that the groundwater in the area was contaminated. Several months later, in December 1990, the Keneficks, who operated a motel on the property located next to the station and obtained their water from a well, noticed that the water in their faucets had a peculiar taste and smell. They sent samples to the Wisconsin Department of Natural Resources and it was discovered that the water contained quantities of benzene, toluene and xylene. The contamination forced the Keneficks to incur expenses in providing safe water for themselves and their motel guests from that point on.

The Keneficks' attorney wrote to the Hitchcocks on March 25, 1991, and again on November 29, 1991, advising them of the contamination and informing them that the Keneficks would be seeking compensation for their damages. The Hitchcocks forwarded the letters to Federated, and the Keneficks commenced this action on April 2, 1992. The Hitchcocks filed a third-party action against Federated a few weeks later.

As we have noted, the Hitchcocks claim coverage under two Federated policies. The first, issued in 1985, covered all sums for which they might become legally obligated to pay for property damage "which occurs during this policy period." The policy period ended on March 15, 1986. The second was a "claims-made" pollu-

223

tion damage policy providing coverage for any claims made against the Hitchcocks during the policy period and reported to the company either during the period or within fifteen days thereafter. The policy provided, among other things, that "[a] claim shall be deemed to have been made only when suit is brought or written notice of such claim is received by the **insured**." That policy lapsed on March 15, 1987.

### I. Coverage Under the 1985-86 "Occurrence" Policy

We review summary judgments *de novo*, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Generally, summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* And "the 'mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' " *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648, 654 (Ct. App. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A factual issue is "genuine" if the evidence is such that reasonable jurors could return a verdict for the nonmoving party. *Id.*

The Hitchcocks argue first that there is a disputed issue of fact that should preclude summary judgment under the 1985-86 policy: that is, when the leak—the "occurrence" insured against—occurred. Federated disagrees. It points to the fact that the Hitchcocks' bookkeeper first noticed that there appeared to be less gasoline in the tanks than shown by the station's delivery and sales records during the last week of May 1986.

Federated thus argues that the undisputed facts establish that the leak first occurred at that time, which was more than two months after the policy had terminated. Federated's argument is based on the following excerpts from the deposition testimony of David Hitchcock:[1]

Q. Do you have any reason to believe that the leak was an on-going thing and had accumulatively leaked over a much longer period of time prior to Memorial Day weekend of 1986?

A. I do not believe so.

. . . .

Q. I believe you indicated that you didn't notice any discrepancies in the inventories prior to this time in May of 1986?

A. No, I didn't.

Federated also points to the testimony of Kristin Ziech, the Hitchcocks' daughter and bookkeeper for the family's business.

Q. And do you remember that this, the incident that occurred Memorial Day weekend in 1986, do you remember that that ever occurred again, a similar instance occurred between [1986 and] 1989 when you concluded doing the books?

A. No.

Q. And you don't recall an incident prior to that?

A. No.

---

[1] Hitchcock's deposition and that of Kristin Ziech, to which we refer below, are not part of the record on appeal. Because neither party disputes the substance of the quoted testimony, however, we consider it to be before us on stipulation.

The Hitchcocks characterize this evidence as "ambiguous"; they claim that the only "fact" established by the evidence is when the leak was *discovered*, not when it *occurred*, which, they assert, is the relevant question under the provisions of the 1985-86 policy. They suggest in their brief that, given "the slow nature of the leak,"[2] and the seasonal nature of the gas station business, "it is impossible to tell when the leak occurred."

Federated points out—correctly, we think—that the Hitchcocks, as the policyholders, have the burden of setting forth specific facts to show that covered bodily injury or property damage occurred during the policy period. In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the plaintiff sued for the death of her husband which, she claimed, was caused by his exposure to asbestos-laden products manufactured and marketed by several corporations including Celotex. Celotex moved for summary judgment dismissing the action on grounds that the plaintiff had failed to put forth any evidence that her husband had been exposed to Celotex products. *Id.* at 319-20. The Supreme Court affirmed the district court's dismissal of the action, holding that summary judgment procedure, which is generally the same in federal practice as it is in Wisconsin,[3]

---

[2] Federated points out that the Hitchcocks offered no evidence to support their claim that the leak was "slow in nature." The Hitchcocks do not refer us to any such evidence in their reply brief, and we have found none in the record.

[3] The Court's holding was based on Rule 56(c) of the Federal Rules of Civil Procedure which, so far as is pertinent here, is identical to § 802.08(2), STATS., stating that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, *together* with the affidavits, if any, show that there is no genuine issue as

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his or] her case with respect to which [he or] she has the burden of proof.

*Id.* at 322-23.[4]

Relying on *Celotex*, we reached a similar conclusion in *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290, 507 N.W.2d 136, 139 (Ct. App. 1993), where we stated that, while a party seeking

to any material fact and that the moving party is entitled to a judgment as a matter of law."

[4] The Supreme Court noted in *Celotex* that its holding was consistent with the purpose of summary judgment procedure which, it said, "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [procedural rules] as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). Thus, said the Court, the rule "must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.*

summary judgment must establish a record sufficient to demonstrate that there are no triable issues of fact, "[t]he ultimate burden . . . of demonstrating that there is sufficient evidence . . . to go to trial at all . . . is on the party that has the burden of proof on the issue that is the object of the motion."[5]

Because, as the Hitchcocks concede, there is no evidence from which they can establish that the leak occurred during the 1985-86 policy period, they have failed to respond to Federated's motion with "a showing sufficient to establish the existence of an element essential to [their] case," *Celotex*, 477 U.S. at 322, and it was therefore proper for the trial court to grant the insurer's motion for summary judgment.

---

[5] We also said in *Hunzinger* that, while a party moving for summary judgment is often able to base the motion on evidentiary material "that specifically negates an essential aspect of the adverse party's proof," there are many instances in which the moving party cannot put forth specific evidence "proving the negative" but is able only to show that "there are no facts of record that support an element on which the opposing party has the burden of proof . . . ." *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 291, 507 N.W.2d 136, 139-40 (Ct. App. 1993). Citing *Celotex* as being "consistent with Wisconsin law" on the subject, *id.* at 292 n.5, 507 N.W.2d at 140, we concluded that the party asserting a claim on which it would have the burden of proof at trial, also has the burden, when faced with a pretrial motion for summary judgment, " 'to make a showing sufficient to establish the existence of an element essential to that party's case.' " *Id.* at 292, 507 N.W.2d at 140 (quoting *Celotex*, 477 U.S. at 322).

## II. Coverage Under the 1986-87 "Claims-Made" Policy

The Hitchcocks next argue that the 1986-87 pollution damage policy affords coverage for any injury caused by the leak. They acknowledge that the policy was effective only for claims made against them during the policy period and reported to Federated within the period or within fifteen days thereafter.

There is no dispute that the policy lapsed on March 15, 1987, and the Hitchcocks acknowledge that the Keneficks' lawsuit was not commenced until 1992, and that they first received written notice of the Keneficks' claim in March 1991. They argue, however, that one of Federated's agents "was on site when the 'cause' of the alleged leak was discovered in June of 1986," and that this fact should be held to fulfill the "claims-made" and notification provisions of the policy. The Hitchcocks do not describe the incident in other than very general terms, stating only that the Federated agent "was made aware" or "became aware" of the leak in 1986, while the policy was still in effect.

Responding, Federated maintains that the agent disputes the Hitchcocks' assertion. Even if we were to accept the assertion as true, however, Federated contends that summary judgment was still appropriate because knowledge of an event is not a "claim" within the meaning of the policy. It points out that claims-made coverage is triggered only by a claim made against the insured during the policy period and it notes that the policy itself states that "[a] claim shall be deemed to have been made only when suit is brought or written notice of such claim is received by the **insured**." We agree with Federated's argument on the issue.

The risk against which a "claims made" policy insures is the risk that a claim will be brought. Where, as here, the policyholder had not been asked to pay over money or to undertake affirmatively to remedy a supposed wrong, the risk that such demands might be made in the future was not yet resolved.

*Chalk v. Trans Power Mfg., Inc.*, 153 Wis. 2d 621, 631, 451 N.W.2d 770, 775 (Ct. App. 1989) (quoting *Bensalem Township v. Western World Ins. Co.*, 609 F. Supp. 1343, 1349 n.8 (E.D. Pa. 1985)).

That Federated's agent may have been aware of a leak during the policy period does not meet the claim and notice requirements of the "claims-made" policy. While coverage under an "occurrence" policy is triggered when an injury is sustained during the policy period, "claims-made" coverage comes into effect only at such time as a claim for injury is asserted—regardless of when the injury occurred. *Chalk*, 153 Wis. 2d at 624 n.1, 451 N.W.2d at 772. We agree with Federated that its agent's knowledge of an event is not a "claim," nor does mere proof of such knowledge comply with the notice requirements of the policy. We conclude, therefore, that the Hitchcocks have not established any entitlement to coverage under the 1986-87 "claims-made" policy, and that, here too, summary judgment was appropriate.

## III. The Duty to Defend

The Hitchcocks argue that, based on the allegations in the Keneficks' complaint, Federated had a duty to defend them in the action and that, while the company had a right to contest coverage, it did not do so in the manner required by established case law. They

claim that, as a result, Federated is not only estopped from denying coverage but should also be held responsible as a matter of law for any damages the Hitchcocks may be required to pay to the Keneficks.

The Hitchcocks' argument lumps several concepts together in a manner that is not always entirely clear but appears to proceed as follows: (1) whether an insurer has a duty to defend an action is determined by the allegations in the complaint filed against the insured; (2) because the Keneficks' complaint alleges that the Hitchcocks knew of the leak "at least as early" as April 1990, it is possible to surmise that the leak may have been in existence as early as 1985 when the "occurrence" policy was still in effect, and if that is so, Federated had a duty to defend; (3) Federated is entitled to challenge coverage, but to do so it must obtain a bifurcated trial of coverage and liability issues and a stay of the liability portion of the case until coverage is determined; (4) if it does not follow this procedure, and the insureds are "le[ft] . . . alone to defend themselves" on the liability issue, Federated has breached its duty to defend and is liable to the insureds for all their damages, regardless of whether it is determined that no coverage exists; and (5) because Federated did not follow that procedure in this case, it is liable for all damages that might be assessed against the Hitchcocks as a result of the gasoline leakage.

The Hitchcocks correctly state that determining whether an insurer has a duty to defend is a question of law, which we review *de novo*, and we make that determination on the basis of the allegations contained in the complaint. *Grube v. Daun*, 173 Wis. 2d 30, 72, 496 N.W.2d 106, 122 (Ct. App. 1992). "If there are allegations in the complaint which, if proven, would be

231

covered, the insurer has a duty to defend," *id.*, and "[i]f there is any doubt about the duty to defend, it must be resolved in favor of the insured." *Elliott v. Donahue*, 169 Wis. 2d 310, 321, 485 N.W.2d 403, 407 (1992).

Because the duty to defend is not based on "extrinsic evidence," *Grube*, 173 Wis. 2d at 72, 496 N.W.2d at 122, but is, as the supreme court has said, "triggered by the allegations contained within the four corners of the complaint," *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 835, 501 N.W.2d 1, 5 (1993), it follows that the existence of the duty depends solely upon the nature of the claim being asserted against the insured and " 'has nothing to do with the merits of the claim.' " *Id.* (quoting *Elliott*, 169 Wis. 2d at 320-21, 485 N.W.2d at 407). Indeed, the supreme court has held that "the nature of the claim alleged against the insured . . . is controlling," and thus a duty to defend may exist "even though the suit may be groundless, false or fraudulent." *Grieb v. Citizens Casualty Co.*, 33 Wis. 2d 552, 558, 148 N.W.2d 103, 106 (1967). In this case, the Keneficks alleged in their complaint that they were damaged by the discharge of petroleum products from the Hitchcocks' underground storage tanks and that the Hitchcocks were negligent in that they knew or should have known of the leakage. The nature of that claim is such that—ignoring, as we must at this stage of the inquiry, both the merits of the claim and any exclusionary or limiting terms and conditions of the policies and, further, resolving all doubts in favor of the insured—we cannot say that there was no duty on Federated's part to defend the action, at least up to the point that its policy defenses to coverage were resolved.

The rule has thus developed that an insurer who has a duty to defend under the broadly drawn rules just

discussed, and who claims that the terms of the policy deny coverage for the incident forming the basis of the suit, must take steps to seek and obtain a bifurcated trial—litigating coverage first and obtaining a stay of all proceedings in the liability and damage aspects of the case until coverage, or lack of coverage, is determined. *Elliott*, 169 Wis. 2d at 318, 485 N.W.2d at 406.

The Hitchcocks concede that the coverage and liability issues were bifurcated in this case and, from the record, it appears that proceedings on liability were stayed by the trial court.[6] They assert, however, that they were somehow "le[ft] alone to defend themselves" on several matters relating to the liability and damage issues in the case either before or during the litigation of coverage, and that, as a result, Federated should be held to have breached its duty to defend them. Their argument is based on *Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 584-85, 427 N.W.2d

---

[6] Indeed, the trial court's order bifurcating the trial stated that "[t]he insurance coverage trial will be placed on an accelerated course to determine the coverage issues prior to the liability and damage trial." However, the Hitchcocks argue that "Federated never attempted to stay the liability proceedings and did not request bifurcation until roughly six months after the [Hitchcocks'] complaint was filed." Thus, they claim that they were compelled to "supply[] answers to numerous interrogatories and production requests, attend[] several depositions, and incur[] substantial attorneys fees for the monitoring and preparation of the case . . . without the . . . defense from Federated."

Federated asserts that "only a minimal amount of activity occurred (one afternoon of depositions) before [it] moved for summary judgment," and thus "there was never any simultaneous litigation of the liability and coverage aspects of this case." We conclude that, as we indicate below, Federated's actions did not constitute a breach of its duty to defend the Hitchcocks.

427, 431 (Ct. App. 1988), where we stated that when "an insurer breaches its duty to defend . . . [it] waives any later challenge to coverage." In *Professional Office Bldgs.*, however, unlike the situation in this case, the insurer did not seek a bifurcated trial to determine coverage issues in advance of the trial on liability and damages; it simply refused to defend the action. *Id.* at 579, 427 N.W.2d at 429. And, in a later case, we declined to apply the "waiver" language of *Professional Office Bldgs.* to a situation where the trial was bifurcated, as it was here, and coverage was tried first.

> It must be emphasized that in *Professional Office Bldgs.*, we discussed the use of waiver of an insurer's right to contest coverage to remedy "an improper refusal to defend" on the liability issue when the coverage issue was *later* raised.
> To apply the same remedy where a trial court has followed the supreme court's recommended bifurcation procedure of *first* conducting a trial on the coverage issue undermines the public policy goals stressed in [the cases].

*Barber v. Nylund*, 158 Wis. 2d 192, 197, 461 N.W.2d 809, 811 (Ct. App. 1990) (emphasis added).

The Hitchcocks have not satisfied us that either the law of *Professional Office Bldgs.* or the facts of this case warrant holding Federated liable for all damages that may be assessed against them in the Keneficks' action. As we have said, this is not a case, like *Professional Office Bldgs.*, where the insurer neither defended nor sought an early determination of coverage; nor is it one like *Elliott* where, even though the trial was bifurcated, litigation of liability continued and had to be defended by the insured. Federated appears to have done precisely what was required of it

by the cases the Hitchcocks rely on: it sought and obtained a bifurcated trial, and the proceedings relating to liability were not held simultaneously to those relating to coverage.[7]

That is not to say that securing a bifurcated trial insulates the insurer in all circumstances. In *Barber*, for example, we noted that "even if an insurer is granted a bifurcated trial . . . [its] duties to its insured are not suspended pending the outcome of the coverage trial." *Barber*, 158 Wis. 2d at 198, 461 N.W.2d at 812. Additionally, as the Hitchcocks recognize in their brief, where the insurer disputes coverage, its duty to defend continues only "until the issue of coverage is resolved." In *Mowry v. Badger State Mut. Casualty Co.*, 129 Wis. 2d 496, 528-29, 385 N.W.2d 171, 186 (1986), for example, the supreme court noted that in cases where a separate trial on coverage does *not* precede the trial on liability and damages, "an insurer may be required to furnish a free defense to its insured *prior to the determination of coverage*." (Emphasis added.) *See also Elliott*, 169 Wis. 2d at 318, 485 N.W.2d at 406 (even where trial is bifurcated, where insured incurs fees and

---

[7] The Hitchcocks suggest that *Grube v. Daun*, 173 Wis. 2d 30, 74-75, 496 N.W.2d 106, 123 (Ct. App. 1992), held on similar facts that the insurer breached its duty to defend and, based on *Professional Office Bldgs.*, concluded that, by so doing, it waived any challenge to coverage. There is no indication in *Grube*, however, that the insurer obtained a bifurcated trial as Federated did in this case. Indeed, we stated at one point in *Grube* that the insurer was being required to indemnify its insured because it "did not contest its coverage in court," and we pointed out later in the opinion that the insurer could have "request[ed] a bifurcated trial or a declaratory judgment so that the coverage issue would be addressed separately by a court." *Id.* at 71, 75, 496 N.W.2d at 122, 123. *Grube* is inapposite.

costs "with respect to the liability issue," insurer is responsible); *Ray Indus., Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 770 (6th Cir. 1992) (where insurer disputes coverage, its duty to defend continues only until questions of coverage are resolved).

Thus, if the Hitchcocks necessarily incurred expenses in defense of the liability and damage portions of the case prior to the time it was determined there was no coverage under the Federated policies, they could seek reimbursement from Federated. Because the case was decided on summary judgment, however, they never had the opportunity to prove such expenses, if in fact any were incurred. We thus reverse on this very limited ground, remanding the case to the trial court to entertain the Hitchcocks' claim for necessary costs of defending the liability and damage portions of the Keneficks' action prior to Federated's motion for summary judgment and resolution of coverage. In all other respects, we affirm the order.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.