Catherine M. DOYLE and Karl Rohlich, Plaintiffs,

v.

Ward ENGELKE, Missionaries to the Preborn Youth for America-National, Youth for America-Milwaukee, Wisconsin, Joseph L. Foreman, Matthew Trewhella, Kelly Dykema, Timothy L. Ruchti, Kurt L. Sonnenburg, Bryan Longworth and Advocates for Life Ministries, Defendants,

WISCONSIN VOICE OF CHRISTIAN YOUTH, INC. and Vic Eliason, Defendants-Appellants-Petitioners,

EMPLOYERS INSURANCE OF WAUSAU, a mutual company, Intervenor-Defendant-Co-Appellant-Petitioner,

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Intervenor-Defendant-Respondent,

Matthew TREWHELLA, Defendant-Counter-Plaintiff-Third-Party Plaintiff,

v.

PLANNED PARENTHOOD OF WISCONSIN, INC., Planned Parenthood Federation of America, Inc., Milwaukee Clinic Protection Coalition, Severa Austin, Linda Mellowes, John Does and Jane Does, Third-Party Defendants.

Supreme Court

*No. 96–0680. Oral argument February 18, 1998.—Decided June 24, 1998.*

277

(Also reported in 580 N.W.2d 245.)

For the defendants-appellants-petitioners there were briefs by *Terry E. Johnson, Timothy J. Pike* and *Jeff M. Blessinger* and *Peterson, Johnson & Murray, S.C.*, Milwaukee and oral argument by *Terry E. Johnson.*

For the intervenor-defendant-co-appellant-petitioner there were briefs by *J. Ric Gass, John J. Laffey,*

*Michael D. Rosenberg*, and *Kravit, Gass & Weber, S.C.*, Milwaukee and oral argument by *J. Ric Gass*.

For the intervenor-defendant-respondent there was a brief by *Arnold P. Anderson* and *Mohr & Anderson, S.C.*, Madison and oral argument by *Arnold P. Anderson*.

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Wisconsin Voice of Christian Youth, Inc. and Vic Eliason (collectively WVCY) and Intervenor Employers Insurance of Wausau (Employers) seek review of an unpublished decision of the court of appeals which affirmed a circuit court grant of summary judgment in favor of Intervenor St. Paul Fire & Marine Insurance Company (St. Paul) determining that it was not obligated to defend or provide coverage under its policy.[1] The petitioners contend that the circuit court erred in concluding that St. Paul's policy with WVCY (the Policy) did not cover the slander of title, third-party negligent supervision, and invasion of privacy claims against WVCY.

¶ 2. We determine that while St. Paul's Policy excuses it from indemnifying WVCY on slander of title claims, the Policy does not excuse St. Paul from defending the negligent supervision claim. Because Employers and WVCY have not preserved the invasion of privacy coverage claim on appeal, we do not reach it. Accordingly, we affirm in part and reverse in part the decision of the court of appeals.

¶ 3. This case derives from an anti-abortion demonstration outside a clinic near Milwaukee, Wisconsin.

---

[1] *Doyle v. Engelke*, No. 96–0680, unpublished slip op. (Wis. Ct. App. Mar. 25, 1997) (affirming judgment of Circuit Court for Milwaukee County, William D. Gardner, Judge).

Shortly after the demonstration, the defendant, Ward Engelke, alleged that the plaintiff, Catherine Doyle, had cursed at and kicked his daughter, Ekaterina Engelke, in the face while she was praying outside of the clinic. Engelke's allegations were covered extensively in the print media and in broadcasts by a radio station owned by WVCY. Subsequently, two employees of WVCY, David Kanz and Louis Schierbeck, filed a false security agreement with the Secretary of State, thereby encumbering the assets of Doyle. They also served a false subpoena at Doyle's residence.

¶ 4. Based on these incidents, Doyle filed suit against Engelke, WVCY, and eleven other related defendants. Doyle's Third Amended Complaint, the complaint currently before us, alleges eleven different causes of action arising from the actions of Engelke, WVCY, and WVCY's employees. Based on an insurance policy covering defamation actions against WVCY, Employers has defended WVCY against Doyle's defamation and other claims.

¶ 5. St. Paul also insures WVCY and its employees under a number of policies, including a comprehensive general liability policy which covers "bodily injuries" caused by WVCY or its employees. During the pendency of this suit before the circuit court, St. Paul intervened as a defendant pursuant to Wis. Stat. § 803.09 (1993–94).[2] St. Paul then filed a motion for summary judgment asking the circuit court to determine that pursuant to the terms of its Policy with WVCY, St. Paul was not obligated to defend WVCY or provide coverage in the event of a judgment adverse to WVCY. Employers also intervened as a party for purposes of contesting the scope of St. Paul's

---

[2] Unless otherwise noted, all future statutory references to the Wisconsin Statutes are to the 1993–94 volumes.

duty to defend WVCY. The circuit granted summary judgment and determined that St. Paul was not obligated to defend or indemnify WVCY on any of Doyle's claims.

¶ 6. WVCY and Employers appealed. On appeal all of the parties concede that eight of Doyle's eleven claims are not covered by the Policy. Employers and WVCY contend, however, that Doyle's negligent supervision, slander of title, and invasion of privacy claims are covered by the Policy.

¶ 7. The court of appeals affirmed the circuit court's grant of summary judgment. The appellate court determined that St. Paul was not required to provide coverage for or defend Doyle's claim for negligent supervision since the Policy's intentional act exclusion applied to the actions of WVCY's employees; that Doyle's property based slander of title action was not covered by the Policy provision covering the more common slander to personal reputation cause of action; and that WVCY's claim for coverage of Doyle's invasion of privacy claim failed due to a specific broadcast exclusion within the Policy.

I.

■■
¶ 8. We review a grant of summary judgment independently, applying the same methodology as the circuit court. *See State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 591–92, 547 N.W.2d 587 (1996). Where no material facts remain in dispute, we must determine whether the movant is entitled to judgment as a matter of law. *See id.* at 592.

■■
¶ 9. This case requires us to interpret an insurance policy to determine if coverage exists and whether

the insurer is subject to a duty to defend. The interpretation of words or clauses in an insurance policy and the existence of coverage under that policy are questions of law which we review de novo. *See Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 744, 456 N.W.2d 570 (1990); *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990).

■

¶ 10. In determining an insurer's duty to defend, we apply the factual allegations present in the complaint to the terms of the disputed insurance policy. *See Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 580, 427 N.W.2d 427 (Ct. App. 1988). We liberally construe those allegations and assume all reasonable inferences.[3] *See Atlantic Ins. Co. v. Badger Med. Supply Co.*, 191 Wis. 2d 229, 241–42, 528 N.W.2d 486 (Ct. App. 1995); *see also Kenefick v. Hitchcock*, 187 Wis. 2d 218, 224, 522 N.W.2d 261 (Ct. App. 1994). An insurer has a duty to defend a suit where the complaint alleges facts which, if proven at trial, would give rise to

[3] Employers would have this court adopt the language of the decade old court of appeals decision, *Berg v. Fall*, 138 Wis. 2d 115, 405 N.W.2d 701 (Ct. App. 1987), indicating that courts may be allowed to go beyond the four corners of a complaint when determining whether coverage exists. The language in *Berg* is, however, contrary to a long line of cases in this state which indicate that courts are to make conclusions on coverage issues based solely on the allegations within the complaint. *See City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 765, 517 N.W.2d 463 (1994); *Elliott v. Donahue*, 169 Wis. 2d 310, 320–21, 485 N.W.2d 403 (1992); *Atlantic Mut. Ins. Co. v. Badger Med. Supply Co.*, 191 Wis. 2d 229, 236, 241, 528 N.W.2d 486 (Ct. App. 1995) (rejecting use of extrinsic aids in coverage determinations). Accordingly, we reject Employer's proffered frame of analysis and confine our analysis to the four corners of the complaint.

the insurer's liability under the terms of the policy. *See Professional Office Bldgs.*, 145 Wis. 2d at 580.

## II.

¶ 11. As a threshold matter we note that St. Paul challenges Employer's standing in this matter. St. Paul claims that because no contractual relationship exists between St. Paul and Employers, St. Paul owes no duty to Employers under the terms of *Loy v. Bunderson*, 107 Wis. 2d 400, 320 N.W.2d 175 (1982) and *Teigen v. Jelco of Wisconsin, Inc.*, 124 Wis. 2d 1, 367 N.W.2d 806 (1985), and no standing exists.

¶ 12. We find *Loy* and *Teigen* inapposite to the present situation. In those cases this court determined that a primary insurer who settled with the plaintiff and obtained a release for itself and its insured was appropriately dismissed from the underlying suit, leaving a secondary tortfeasor to defend the plaintiff's remaining claims beyond the primary insurer's limits.

¶ 13. In this case we acknowledge that St. Paul owes no contractual duty to Employers. However, the disputed issue in this summary judgment motion is whether St. Paul's Policy requires St. Paul to defend WVCY on claims which Employers, as another policy provider, has already begun to defend.[4] It was on this basis that the circuit court granted Employer's oral motion to intervene when the court also granted St. Paul's motion to intervene for purposes of determining coverage. As Wis. Stat. § 803.09 indicates:

---

[4] Where an insurer's policy provides coverage for even one claim made in a lawsuit, that insurer is obligated to defend the entire suit. *See School Dist. of Shorewood v. Wausau Ins. Co.*, 170 Wis. 2d 347, 366, 488 N.W.2d 82 (1992); *Atlantic Mutual*, 191 Wis. 2d at 242.

**Intervention.** **(1)** Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

¶ 14. In this case the circuit court's resolution of St. Paul's coverage of WVCY directly affects Employers' participation in the suit under the terms of its policy. Thus, Employers has an "interest" in the "transaction which is the subject of the action" and Employers has standing before the court.

### III. Negligent Supervision

¶ 15. The first substantive issue we are asked to address is whether St. Paul's Policy requires St. Paul to defend WVCY against Doyle's claim that WVCY was negligent in its supervision of its employees, Kanz and Schierbeck. The circuit court concluded that St. Paul was not required to defend WVCY on this claim because Doyle's allegations against WVCY evidenced neither a "bodily injury" nor an "event," as defined in the Policy, and because coverage was otherwise barred by the intentional acts exclusion of the Policy. The court of appeals disagreed in part, determining that the complaint alleged a "bodily injury" and an "event," but still concluded that the intentional acts exclusion clause released St. Paul from any duty to defend. We reach a different result.

¶ 16. St. Paul's Policy provides coverage for "[b]odily injury and property damage liability." The Policy indicates that:

We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury. . .that:

- happens while this agreement is in effect; and

- is caused by an event.

. . .

Bodily injury is then defined to mean:

any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness or disease.

- Mental anguish, injury or illness.

- Emotional distress.

- Care, loss of services, or death.

██

¶ 17. This court has recently recognized that a tort of negligent supervision exists in the State of Wisconsin. *See Miller v. Wal-Mart Stores*, 219 Wis. 2d 250, 580 N.W.2d 233 (1998). In this case Doyle's complaint alleges that WVCY failed to exercise reasonable care in the supervision of its two employees. It alleges that such negligence is responsible for the employees intentionally causing Doyle severe emotional distress and disabling injuries through their filing of a false security agreement against her assets. Doyle's complaint comports with the negligent supervision cause of action requirements as set forth in *Wal-Mart*.

¶ 18. The question then becomes whether St. Paul's Policy covers such a claim. St. Paul argues that Doyle's complaint does not allege any bodily injury, as required by the Policy. It asserts that reliance by the court of appeals on *Tara N. v. Economy Fire & Casualty*

*Ins. Co.*, 197 Wis. 2d 77, 540 N.W.2d 26 (Ct. App. 1995), · was inappropriate since that case interpreted a "bodily injury" insurance clause in a context where both physical and psychological injuries were alleged.

■

¶ 19. Resolution of this issue requires us to determine whether Doyle has alleged a "bodily injury" sufficient to invoke coverage under the Policy. Like the court of appeals, we believe she has made such an allegation. The complaint alleges not only that Doyle suffered "harm" by virtue of WVCY's supervision of its employees, but also that she suffered "emotional distress" which was "disabling" as a result of the employees' wrongful actions. As the court of appeals noted in *Tara N.*, a "reasonable insured would understand [mental, emotional or psychological] conditions to be included within the concepts of 'sickness or disease' which the policy uses to define 'bodily injury.' " *See Tara N.*, 197 Wis. 2d at 87.

¶ 20. While St. Paul claims that these allegations are insufficient in light of the inclusion of the "physical harm" language in the definition of "bodily injury" set out above, we are not dissuaded from our result. As another court has noted, "[w]e are unable to separate a person's nerves and tensions from his [or her] body. It is common knowledge that worry and anxiety can and often do have a direct effect on other bodily functions." *Levy v. Duclaux*, 324 So. 2d 1, 10 (La. Ct. App. 1975). Because we assume the existence of all facts alleged in the complaint, and construe those allegations liberally in favor of coverage, it appears that bodily injury constituting physical harm is sufficiently alleged and Doyle's claim comports with the initial requirement of the Policy provision.

¶ 21. In addition, St. Paul attempts to distinguish *Tara N.* on the grounds that in that case "the issue was whether emotional distress, in addition to physical injury, was covered." St. Paul brief at 35. St. Paul's factual assertion is accurate—Tara did claim both physical and psychological injuries in the circuit court. However, on appeal the *Tara N.* court determined that Tara's psychological damage claim by itself fell within the policy coverage of "bodily injury" since it included sickness or disease. *See Tara N.*, 197 Wis. 2d at 90. Thus, while we acknowledge that the policy language in *Tara N.* is not directly dispositive of the dispute in this case, we find the parallel reasoning persuasive.

¶ 22. Next we must ascertain whether WVCY's negligent supervision of its employees constitutes an "event" for coverage purposes. The Policy defines "Event" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

¶ 23. Upon review, we adopt the conclusion of the court of appeals that Doyle has alleged that the occurrence of an "event" led to her damages. While the term "accident" is not defined further by the Policy, we must give words used in an insurance contract their common, everyday meaning. *See Schmidt v. Luchterhand*, 62 Wis. 2d 125, 133, 214 N.W.2d 393 (1974). Turning then to the common definition, we discover that "accident" is defined as "[a]n unexpected, undesirable event" or "an unforeseen incident" which is characterized by a "lack of intention." *The American Heritage Dictionary of the English Language* 11 (3rd ed. 1992). Similarly, "negligence" is defined as "failure to exercise the degree of care considered reasonable under the cir-

cumstances, resulting in an unintended injury to another party." *Id.* at 1209.

¶ 24. It is significant that both definitions center on an unintentional occurrence leading to undesirable results. As we have recognized in the past, comprehensive general liability policies are "designed to protect an insured against liability for negligent acts resulting in damage to third-parties." *General Cas. Co. of Wisconsin v. Hills*, 209 Wis. 2d 167, 183–84, 561 N.W.2d 718 (1997) (quoting Arnold P. Anderson, *Wisconsin Insurance Law* § 5.14, at 136 (3rd ed. 1990 & Supp. 1997)). Accordingly, we have little trouble concluding that a reasonable insured would expect the Policy provision defining "event" to include negligent acts.

¶ 25. Having concluded that the allegations present a "bodily injury" occurring as part of a covered "event," we consequently must resolve the parties' dispute over application of the intentional acts exclusion to the negligent supervision claim. That provision indicates that St. Paul "won't cover bodily injury or property damage that's expected or intended by the protected person." Under the policy's definition of "[w]ho is protected under this agreement," both WVCY and its individual employees are protected persons.

¶ 26. St. Paul argues, and the circuit court and court of appeals agreed, that the policy exclusion bars coverage for intentional acts of employees acting within their employment. Under that interpretation WVCY is not covered for the intentional acts of the employees since they are also protected persons.

¶ 27. We disagree with the form of the analysis offered by the court of appeals. It is significant in this case that the coverage disputed by the parties is not St. Paul's obligation to defend WVCY's employees individ-

ually for their intentional acts against Doyle. Rather, the coverage we are addressing is WVCY's individual coverage as a protected person under the Policy.

¶ 28. Restating the intentional act exclusion once again, it indicates that St. Paul "won't cover bodily injury. . .that's. . .intended by the protected person." Doyle's negligent supervision claim alleges no acts causing bodily harm which were intended by WVCY as the protected person under the Policy.[5] Instead, Doyle's supervision claim focuses on WVCY's negligence in supervising its employees—whether or not the employees committed the underlying wrong intentionally.[6] This interpretation is strengthened by the "separation of protected persons" clause in the Policy.[7]

---

[5] St. Paul's reliance upon allegations in other counts alleging intentional conduct by WVCY is inapposite, as parties are permitted to plead in the alternative.

[6] St. Paul's reliance upon *Berg v. Schultz*, 190 Wis. 2d 170, 526 N.W.2d 781 (Ct. App. 1994) for the proposition that an employer cannot be held liable for the intentional acts of its employees is unworkable. In *Berg*, the court was confronted with an insurance exclusion which, unlike the clause here, specifically excluded coverage for claims "arising out of" an employee's commission of an assault and battery. *See Berg*, 190 Wis. 2d at 174.

Moreover, St. Paul's objection to responsibility to defend WVCY against a negligent supervision claim on vicarious liability grounds fails to recognize that it is not a claim in vicarious liability. While negligent supervision does require an underlying wrong to be committed by the employee as an element, the tort actually focuses on the tortious, i.e., negligent, conduct of the employer.

[7] The clause provides:

Separation of protected persons. We'll apply this agreement:

• to each protected person named in the Introduction as if that protected person was the *only one* named there; and

Since a bodily injury is alleged to have occurred as part of an event, and the intentional act exclusion cannot apply to WVCY's negligent conduct, the circuit court and court of appeals erred in concluding that St. Paul was under no duty to defend WVCY on the negligent supervision claim.[8]

## IV. Slander of Title

¶ 29. Next, we address the petitioners' claim that the Policy also includes coverage for the slander of title action against WVCY. The petitioners base their claim for coverage on the personal injury clause of the Policy which defines personal injury to include "libel or slander."

¶ 30. Libel and slander are otherwise undefined terms in the Policy. The petitioners accordingly contend that the bald use of the term slander renders the insurance clause ambiguous and that the reasonable insured would believe coverage for slander of title exists. We disagree.

¶ 31. As the court of appeals noted, "slander is an offense against the person which damages a person's reputation [while] [s]lander of title is a claim against property which involves damage to property." *Doyle v. WVCY*, No. 96–0680, unpublished slip op. at 4 (Wis. Ct. App. Mar. 25, 1997) (citing *Towne Realty v. Zurich Ins. Co.*, 193 Wis. 2d 544, 555, 534 N.W.2d 886 (Ct. App. 1995) and *Kensington Dev. Corp. v. Israel*, 142 Wis. 2d 894, 419 N.W.2d 241 (1988)). Slander of title is a com-

---

•separately to each *other protected person.* (Emphasis added.)

[8] Because we reach this conclusion, we need not consider Employer's argument that the exception to the exclusion for use of reasonable force to protect others applies to the unborn.

pletely different breed of claim than slander of a person's reputation.

¶ 32. Despite this substantive distinction, the petitioners contend that the reasonable person could read the naked reference to slander to include slander of title and that any ambiguity must be construed in favor of coverage. However, we note that the petitioners' position is contrary to their later acknowledgment that "the term 'slander of title' has, by common use, become a well-known and recognized phrase of the law." Employer's brief at 37 (quoting 53 C.J.S. Libel and Slander § 204 (citations omitted)). Since the petitioners concede that the property-based slander of title terminology is a commonly used term of legal art, we fail to see how a reference to slander without more can give rise to any ambiguity subject to misinterpretation by the reasonable insured.

¶ 33. Moreover, the structure and placement of the slander clause also alleviates any potential for ambiguity. Slander is listed under the terms of coverage provided by St. Paul for personal injury, not under the terms of coverage for property damage. In addition, the slander clause is part of a conjunctive clause which includes coverage for libel—another injury to personal reputation cause of action. Accordingly, we do not believe that the policy can be interpreted to cover slander of title actions.

### V. Invasion of Privacy

¶ 34. Finally, the petitioners also allege that the circuit court erred in concluding that St. Paul was not obligated to defend Doyle's claim against WVCY for invasion of privacy. The court of appeals affirmed the circuit court's determination on this claim.

¶ 35. As St. Paul noted at oral argument on this issue, the petitions for review filed by Employers and WVCY did not raise the invasion of privacy issue on appeal to this court. Wisconsin Stat. § (Rule) 809.62(6) indicates:

> The supreme court may grant the petition upon such conditions as it considers appropriate, including the filing of additional briefs. If the petition is granted, the petitioner cannot raise or argue issues not set forth in the petition unless ordered otherwise by the supreme court. The supreme court may limit the issues to be considered on review.

¶ 36. Our order granting the petitioners' petitions for review indicated only that the "petitions for review are granted," followed by an explicit citation to Wis. Stat. § (Rule) 809.62. Because the invasion of privacy claim was not raised on petition to this court, WVCY and Employers have waived this court's consideration of whether the Policy covers that claim. While this court retains the inherent power to consider issues beyond those raised in the petitions, *see Cynthia E. v. La Crosse County Human Services Dept.*, 172 Wis. 2d 218, 232, 493 N.W.2d 56 (1992) (*"In re Jamie L."*), we decline to do so in this matter. Accordingly, the court of appeals' rejection of coverage for the invasion of privacy claim stands.

## VI.

¶ 37. We conclude that Employers has standing in this suit and that the proper determination of insurance coverage is based solely on the policy as applied to the allegations within the plaintiff's complaint. Exercising this standard, we determine that while St. Paul

is under no duty to defend WVCY against Doyle's slander of title or invasion of privacy claims, the circuit court inappropriately granted summary judgment to St. Paul based on Doyle's negligent supervision claim. Accordingly, we affirm in part and reverse in part the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

¶ 38. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE and JANINE P. GESKE, J. did not participate.

¶ 39. DONALD W. STEINMETZ, J. (*concurring*). I agree with the majority opinion. I write separately to point out the difference between this case and *Miller v. Wal-Mart Stores*, 219 Wis. 2d 250, 580 N.W.2d 233 (1998). In this case, the plaintiff has alleged that WVCY's employees intentionally caused the plaintiff severe emotional distress and disability injuries. No such underlying tort existed in *Wal-Mart*. This case, rather than *Wal-Mart*, provides a proper application of the tort of negligent hiring, training, and supervision. For the reasons I stated in my dissent in *Wal-Mart*, I continue to believe that an underlying tort is a necessary element of the tort of negligent hiring, training, and supervision.

¶ 40. I am authorized to state that Justice Jon P. Wilcox joins this concurring opinion.