**EAST COAST FASTENERS & CLO-SURES, INC.; Plyco Corporation; and FBi Buildings, Inc., Plaintiffs–Appellants,**

v.

**EMPLOYERS MUTUAL CASUALTY COMPANY, Defendant–Appellee.**

Nos. 02–2271, 02–2310, 02–4048.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 2004.

Decided March 24, 2004.

William T. Webb, Redwood City, CA, for Plaintiffs–Appellants/Plaintiffs.

John J. Lorber, May, Oberfell & Lorber, South Bend, IN, Francis A. Spina, Brian O'Gallagher, Cremer, Kopon, Shaughnessy

& Spina, Chicago, IL, for Defendants–Appellees/Plaintiffs–Appellees.

Andrew S. Gutwein, Bennett, Boehning, & Clary, Christine A. DeSanctis, Lafayette, IN, for Defendant.

Brian J. Paul, Ice Miller, Indianapolis, IN, for Defendant–Appellant.

Before EASTERBROOK, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## Order

Employers Mutual issued to East Coast Fasteners a policy covering property damage caused by "accidents" arising from the use of its products. Some of its fasteners (screws, actually; we'll be colloquial) were sold to FBi Buildings for installation in its line of no-rust metal structures. FBi could galvanize the metal sidings and take other steps to stop rust, but for the installed product to be rust-*free* every possible source of rust had to be averted. Deteriorating screws in an otherwise perfect structure would cost FBi with respect to both money (to replace the screws) and its reputation for quality. So FBi negotiated in detail with East Coast Fasteners to ensure that it acquired only rustproof hardware. The screws that East Coast Fasteners furnished according to the agreed specification were indeed not subject to rusting. Eventually, however, East Coast Fasteners started to deliver screws with a different composition. We must assume, given the posture of the case, that East Coast Fasteners honestly believed that these screws would not rust. It was wrong. They did, and they had to be replaced. Litigation ensued between FBi and East Coast Fasteners (and its parent Plyco) to apportion the expense of repair.

East Coast Fasteners tendered the litigation to Employers Mutual, which declined to defend or indemnify East Coast Fasteners. Employers Mutual took the position that damage to the screws themselves–which Employers Mutual took to be the only claim–is not covered; only if the screws damaged the buildings would coverage exist. Moreover, the insurer concluded that the substitution of the inferior screws was intentional, and hence any loss was not an "accident." With Employers Mutual on the sidelines, East Coast Fasteners and FBi proceeded to settle their litigation for a sum that was to be paid exclusively by the insurer. East Coast Fasteners assigned to FBi its claim against Employers Mutual, and FBi promised not to collect from East Coast Fasteners. Despite being at fault, East Coast Fasteners could be a net beneficiary, if recovery from the insurer exceeds a specified amount.

We have the follow-up litigation, by East Coast Fasteners, Plyco, and FBi against Employers Mutual, trying to collect on the policy. The parties are of diverse citizenship, and the amount in controversy exceeds $75,000, so 28 U.S.C. § 1332(a)(1) furnishes subject-matter jurisdiction. The district court held that Wisconsin law applies and that the intentional provision of screws that did not conform to the contract could not be called an "accident," which led to summary judgment for the insurer. On appeal the parties debate a host of issues, of which only one matters: whether casualty to the screws themselves is "property damage" covered by the policy. We hold that it is not and thus affirm the district court on this alternative ground. See *Massachusetts Mutual Insurance Co. v. Ludwig*, 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976).

██ The district court held that Wisconsin law governs the interpretation of this policy, which was issued in Wisconsin and covered risks arising out of East Coast Fastener's operations in Wisconsin. That decision (including the denial of re-

consideration) is correct, for the reasons the district judge gave; it is not necessary to cover that ground again. Wisconsin follows the rule that property-damage coverage in a policy such as the one at issue here means damage to someone else's property, not damage to the products that the insured sells. *Wisconsin Label Corp. v. Northbrook Property & Casualty Insurance Co.*, 233 Wis.2d 314, 607 N.W.2d 276 (2000). The cost of replacing defective screws reflects shortcomings in the screws themselves and therefore is not covered. Unless the screws caused damage to FBi's buildings, the policy does not provide indemnity.

When determining coverage, moreover, Wisconsin follows a four-corners approach, comparing the allegations of the underlying complaint against the terms of the policy. See *Doyle v. Engelke*, 219 Wis.2d 277, 284, 580 N.W.2d 245, 248 (1998). The relevant allegations are those in the complaint that FBi filed against East Coast Fasteners. (It was technically a counterclaim in the state-court litigation, but this does not matter, so we call it "the complaint.") And this complaint does not allege that the buildings suffered any damage, or indeed that any of FBi's customers lost use of the buildings for even an hour. The complaint therefore does not trigger the policy's coverage; it is as simple as that.

East Coast Fasteners argues that rust by its nature spreads to nearby surfaces, and the district court assumed this. Yet the proposition is implausible; it must be alleged (and substantiated if contested), not simply assumed. Rust is the oxidation of metal, not a contagious disease. A rusty screw holding together two pieces of wood does not cause the lumber to deteriorate–though if the screw itself fails the joint may become unstable. Nor does a rusty screw cause glass, plastic, concrete, stucco, or other common building materials to rust; that's physically impossible. Likewise a galvanized or stainless-steel surface does not rust; zinc atoms bind to the iron more tightly than oxygen would. A rusting screw might swell and crack the zinc surface, but when a gap develops in the coating oxygen is attracted to the zinc rather than the iron, which therefore does not rust. Maybe FBi was using an alloy that could be induced to rust as a result of cracks and pores created by rusting screws, but the complaint does not say this. Indeed, the complaint does not even allege that rust from the screws discolored the surface (which could happen with plastic and other rust-free materials). The complaint is lucid and precise: the screws were themselves defective and had to be replaced. It does not allege that any other work, including stain removal, was required to put the structures back in prime condition. The appellate briefs do not point to any scientific or technical literature supporting the "rust always spreads" proposition; no expert evidence to that effect is in the record. Thus the complaint did not allege "property damage" within the policy's coverage, and Employers Mutual had no duty to defend or indemnify. Moreover, because the insurer had no duty to defend, it is unnecessary to consider the possibility that an unjustified failure to defend requires indemnity; the failure to defend was entirely justified.

A{\scriptsize FFIRMED}