ANN WALSH BRADLEY, J. (dissenting).
¶ 39 The issue presented is whether Mustafa Mustafa's business liability insurance policy covers Talley's claim that Mustafa negligently supervised his security guard. That is, assuming Talley proved his negligent supervision claim against Mustafa, would the insurance policy require Auto-Owners to indemnify Mustafa for the damages caused by Mustafa's negligence? See Estate of Sustache v. Am. Family Ins. Co., 2008 WI 87, ¶ 29, 311 Wis. 2d 548, 751 N.W.2d 845 (court is to assume plaintiff will prove his case in determining whether the insured has coverage).
*424 ¶ 40 Under the guise of answering the coverage question, the majority instead scrutinizes the merits and perceived weaknesses of Talley's negligent supervision claim. It concludes that the insurance policy does not provide coverage for Talley's negligent supervision claim against Mustafa because the claim cannot succeed.
¶ 41 In reaching its conclusion, the majority errs in two distinct ways. First, the majority fails to analyze the accident from the standpoint of the insured, thereby misconstruing the injury-causing events alleged in Talley's complaint. Second, it misunderstands the court's task at a coverage trial.
¶ 42 I determine that when correctly viewed from the standpoint of the insured and when the court properly adheres to its task at a coverage trial, the insurance policy provides coverage for Talley's negligent supervision claim against Mustafa. Accordingly, I respectfully dissent.
I
¶ 43 Archie Talley alleges that he suffered damages as a result of Mustafa's negligent failure to properly supervise a security guard employed at Mustafa's liquor store and food market. The complaint alleges that after initiating a verbal altercation with Talley as Talley entered Mustafa's store, the security guard punched Talley twice in the face. At the time of the assault, Mustafa carried a business liability insurance policy with Auto-Owners Insurance Company that covered bodily injuries caused by accidents (e.g. negligent acts). See Doyle v. Engelke, 219 Wis. 2d 277, ¶¶ 23-24, 580 N.W.2d 245 (1998) (explaining *71 that negligent acts constitute "accidents"). *425 ¶ 44 Specifically, the policy covers bodily injury or property damage caused by an "occurrence." See majority op., ¶ 3. The policy defines an "occurrence" as "an accident[.]" An exclusion to the liability coverage provides that: "This insurance does not apply to: a. 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Id. (emphasis added).
¶ 45 The majority rests its determination of no coverage on the conclusion that there is no "occurrence" covered by the policy. It arrives at this conclusion because, in its view, Mustafa cannot be liable for negligent supervision given that "[i]ntentionally punching someone in the face two times is not an accident under any definition." Majority op., ¶ 16. Further, it reasons that the law does not require Mustafa "to tell [the security guard] not to punch customers in the face." Id., ¶28.
¶ 46 Of course, intentionally punching someone in the face is not an accident from the standpoint of the assailant. And, of course the law does not require Mustafa to say to the security guard, "do not punch customers in the face." Such conclusions are obvious and do not require legal analysis. It is in its faulty legal analysis where the majority stumbles.
II
¶ 47 The majority's legal analysis suffers from tunnel vision. It focuses on the assault by the security guard, thereby misconstruing the injury-causing event alleged in the negligent supervision claim.
¶ 48 Talley certainly alleges that the actual physical assault caused him injury, but that is not the only injury-causing event he alleges. Additionally, he *426 alleges as an injury-causing event that Mustafa failed to properly supervise his store's security guard.
¶ 49 Assuming Talley is successful in proving his negligent supervision claim against Mustafa, he will have proven that Mustafa was negligent by breaching a duty of care owed to Talley; the security guard's assault was a cause-in-fact of Talley's injury; and Mustafa's failure to properly train or supervise his security guard was the cause-in-fact of the assault. That is, Talley will have proven that Mustafa's negligent failure to properly supervise his security guard was a cause-in-fact of the assault.
¶ 50 "[T]he determination of whether an injury is accidental under a liability insurance policy should be viewed from the standpoint of the insured." Schinner v. Gundrum, 2013 WI 71, ¶ 52, 349 Wis. 2d 529, 833 N.W.2d 685. Whether the assailant acted intentionally has no bearing on this question. Indeed, Talley concedes that the assault itself was an intentional act, which is not covered by the Auto-Owners policy.[1] Thus, our focus should be on the negligent supervision claim against Mustafa only.
¶ 51 Insurance contracts are interpreted as they would be understood by a reasonable person in the position of the insured. Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65. Mustafa's insurance policy covers bodily injuries caused by his negligent acts. A reasonable insured would understand this to cover damages caused by the insured's negligent failure to properly supervise and train his security guard.
¶ 52 Further, a reasonable insured would not understand that the policy's intentional-act exclusion *427 precluded coverage *72 for a negligent supervision claim. See id., ¶ 24 (if the claim triggers an initial grant of coverage, the court then determines whether any exclusions preclude coverage of the claim). There is nothing in the record to indicate that Mustafa intended the assault. Thus from the standpoint of the insured, the assault was unintended and therefore an accident, constituting an "occurrence" under the policy.
III
¶ 53 The majority additionally errs by impermissibly relying on the perceived weakness of Talley's negligent supervision claim to determine that the insurance policy does not provide coverage for that claim. In the majority's view, there can be no coverage for Talley's negligent supervision claim because the claim cannot succeed. See majority op., ¶¶ 28-29.
¶ 54 This line of reasoning reflects a misunderstanding of the court's task at a coverage trial. At a coverage trial, the court's task is to determine if the language of the policy requires the insurance company to indemnify its insured if the plaintiff's claims against the insured are successful. See Estate of Sustache, 311 Wis. 2d 548, ¶ 29, 751 N.W.2d 845 (court is to assume plaintiff will prove his case in determining whether the insured has coverage); see also Olson v. Farrar, 2012 WI 3, ¶ 38, 338 Wis. 2d 215, 809 N.W.2d 1 (quoting Estate of Sustache, 311 Wis. 2d 548, ¶ 29, 751 N.W.2d 845 ). In completing this task, the court should not focus on the plaintiff's likelihood of success on the merits. Instead, the court should concern itself only with whether coverage is required by the language of the policy, assuming the plaintiff's claims are successful.
¶ 55 There are good reasons why the court should not entertain merit-based arguments made *428 during the course of a coverage trial. Such a practice places the insured in a very awkward position. When the insurance company argues that coverage does not exist because the plaintiff's claims are too weak to succeed, what is the insured to do? Should the insured argue that the claims against him lack merit? Or the insured could argue that the plaintiff's claims are capable of succeeding, and thus coverage would be afforded under the language of the policy assuming that the plaintiff would prove the case against the insured.
¶ 56 It appears that each possibility presents the insured with a catch-22. If the insured argues that the claims brought against the insured are strong enough to proceed to trial (thus strengthening the insured's argument that coverage should be afforded), he undermines his argument at the liability phase that the plaintiff's claim lacks merit. On the other hand, if the insured instead asserts that the claims against the insured are too weak to proceed to trial in order to avoid undermining the insured's merit-based arguments against the plaintiff's claims, he argues against his own interest in the coverage dispute and risks losing the benefit of insurance coverage.
¶ 57 This untenable choice can be avoided by courts simply adhering to the task at hand in a coverage dispute: determining whether the language of the policy would require the insurance company to indemnify the insured for damages arising out of a particular claim assuming that the plaintiff is successful in proving that claim at trial.
¶ 58 The majority's failure to understand the court's task at a coverage trial likewise portends to undercut the well established procedure that when coverage is disputed, coverage and liability issues are *429 bifurcated at trial. See, e.g., Marks v. Houston Cas. Co., 2016 WI 53, ¶ 63, 369 Wis. 2d 547, 881 N.W.2d 309 (quoting *73 Prof'l Office Bldgs., Inc. v. Royal Indem. Co., 145 Wis. 2d 573, 585, 427 N.W.2d 427 ("Where coverage is an issue, bifurcated trials are the norm.") ); Elliott v. Donahue, 169 Wis. 2d 310, 318, 485 N.W.2d 403 (1992) (explaining that "the insurer should not only request a bifurcated trial on the issues of coverage and liability, but it should also move to stay any proceedings on liability until the issue of coverage is resolved").
¶ 59 A motion to bifurcate the coverage and liability trials was made and granted in this case. Yet, if coverage is denied on the basis that the claim at issue cannot succeed on the merits, why would the circuit court need to bifurcate the issues of liability and coverage in the first instance? If it is truly proper to raise merit-based arguments against a claim in the context of a coverage dispute, there seems to be little, if any, need to bifurcate the issues of coverage and liability because the argument against coverage is also an argument against liability.
IV
¶ 60 The majority opinion misunderstands both the allegations in the complaint and the applicable law regarding coverage trials. It ignores Talley's claim that Mustafa's negligent supervision of his security guard was a cause-in-fact of the assault, and mistakenly engages in an analysis of the merits of Talley's negligent supervision claim. It instead should cabin its analysis to whether coverage would be afforded under the language of the policy assuming Talley succeeds in proving his negligent supervision claim.
*430 ¶ 61 I conclude that the policy provides coverage for Talley's claim of negligent supervision against Mustafa. Properly viewed from Mustafa's standpoint, the security guard's punch of Talley was an accident and therefore a covered "occurrence."
¶ 62 For the reasons set forth above, I respectfully dissent.
¶ 63 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and DANIEL KELLY join this dissent.

Compare Wis. Stat. § 802.03(2) (2015-16) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."), and John Doe 1 v. Archdiocese of Milwaukee, 2007 WI 95, ¶ 39, 303 Wis. 2d 34, 734 N.W.2d 827 ("We have interpreted this statute to require that 'allegations of fraud must specify the particular individuals involved, where and when misrepresentations occurred, and to whom misrepresentations were made.' " (quoting Kaloti Enters., Inc. v. Kellogg Sales Co., 2005 WI 111, ¶ 21, 283 Wis. 2d 555, 699 N.W.2d 205 ) ), with majority op., ¶ 16 ("Because there are no facts in Talley's complaint (or in any extrinsic evidence) alleging any specific separate acts by Mustafa that caused Talley's injuries, there is no occurrence triggering coverage for the negligent supervision claim.").