David M. MARKS, Plaintiff-Appellant-Cross-Respondent,†

v.

HOUSTON CASUALTY COMPANY, Defendant-Respondent-Cross-Appellant,

BEDFORD UNDERWRITERS, LTD., Defendant-Respondent.

Court of Appeals

*No. 2013AP2756. Submitted on briefs November 5, 2014. —Decided May 7, 2015.*

2015 WI App 44

(Also reported in 866 N.W.2d 393.)

† Petition for Review granted 9/15/15.

505

507

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Jon E. Fredrickson* of *Kravit, Hovel & Krawczyk, S.C.*, Milwaukee.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *John D. Finerty, Jr.* and *Adam E. Witkov* of *Michael Best & Friedrich LLP* of Milwaukee and *Aidan M. McCormack* of *DLA Piper LLP*, New York, NY.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terry E. Johnson* and *Ryan P. Fetherston* of *Peterson, Johnson & Murray, S.C.*, Milwaukee.

Before Lundsten, Sherman and Kloppenburg, JJ.

¶ 1. SHERMAN, J.   David Marks appeals a judgment in favor of Houston Casualty Company and Bedford Underwriters, Ltd., Houston Casualty's "surplus lines agent," declaring that Houston Casualty did

508

not, in other actions, breach its duty to defend by failing to provide Marks a defense. The circuit court concluded that Houston Casualty had no duty to defend Marks in the other actions because a comparison of the facts alleged in the complaints in those cases and a policy exclusion in an insurance policy issued by Houston Casualty to Marks revealed the lack of coverage. Houston Casualty cross-appeals, challenging the circuit court's determination that the policy provided an initial grant of coverage. For the reasons explained below, we affirm the circuit court's determination that Houston Casualty did not have a duty to defend Marks. Thus, we need not and do not reach the issue raised in Houston Casualty's cross-appeal.

## BACKGROUND

¶ 2. Marks is the trustee of two trusts, known as the Irrevocable Children's Trust (ICT) and the Irrevocable Children's Trust No. 2 (ICT2). As trustee, Marks is responsible for investing, managing and growing the corpus of the trusts. In the course of such duties, Marks allegedly invested and took a majority stock position in a company called Titan Global Holdings, Inc. and its subsidiaries. Marks sat on the board of Titan, acted as the board's chair, and served, as necessary, as an officer and/or director of Titan's subsidiaries, all of which Marks alleged was in furtherance of his duties as trustee.

¶ 3. Houston Casualty issued a "Professional Liability Errors & Omissions Insurance Policy" to Marks for the policy period October 28, 2008 to October 28, 2009. The policy provides coverage up to $1,000,000 for any loss and/or expenses relating to any claims, demands, or suits based upon or arising out of Marks's profession. In an endorsement, the policy states that

509

the "Named Insured's Profession" is "[s]olely in the performance of services as the Trustee of the Irrevocable Children's Trust (ICT), and/or Irrevocable Children's Trust No. 2 (ICT2), for a fee." The policy contains the following exclusion:

IV. EXCLUSIONS

This Policy does not apply either directly or indirectly to any Claim and Claim Expenses:

. . . .

(b) For liability arising out of the Insured's services and/or capacity as:

(1) an officer, director, partner, trustee, or employee of a business enterprise not named in the Declarations or a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust.

¶ 4. Marks was sued six times in five states for his actions related to Titan, and Marks submitted claims to Houston Casualty for each lawsuit. Houston Casualty either refused or failed to provide a defense for Marks for any of the lawsuits. On November 17, 2009, Marks brought suit against Houston Casualty and Bedford, seeking various forms of relief based upon Houston Casualty's failure or refusal to provide him a defense in those other lawsuits. Houston Casualty cross-claimed against Bedford, alleging that Houston Casualty was entitled to be indemnified by Bedford to the extent that Houston Casualty was found liable to Marks.

¶ 5. All parties moved for summary judgment. The circuit court granted summary judgment in favor of Houston Casualty and Bedford on Marks's claims, and dismissed Houston Casualty's cross-claim against

Bedford. Marks appeals, and Houston Casualty cross-appeals from the summary judgment on Marks's claims. The summary judgment order dismissing Houston Casualty's cross-claim against Bedford is not appealed from and is not before us.[1]

## DISCUSSION

¶ 6.   We review summary judgments de novo, and will uphold a grant of summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2013–14); *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. For purposes of summary judgment here, there are no material disputed facts because the duty-to-defend law that we apply requires that we look to the allegations in the complaints against Marks and there is no dispute regarding what those allegations are. What remains is the correct interpretation of duty to defend law and the

---

[1] Although the notice of cross-appeal contains the following language: "PLEASE TAKE FURTHER NOTICE that Defendant Houston Casualty Company cross-appeals from each and every part of said Order that is adverse to Houston Casualty Company," the only issue specifically mentioned in the notice of cross-appeal is the circuit court's determination that the insuring clause of the policy covers the claims. Consistent with that, the cross-appellant's brief filed by Houston Casualty Company raises no issue regarding the granting of summary judgment dismissing its contribution claim against Bedford. Any issue that Houston Casualty Company might have raised with regard to the summary judgment in favor of Bedford is therefore abandoned. *See Cosio v. Medical College of Wis., Inc.*, 139 Wis. 2d 241, 242–43, 407 N.W.2d 302 (Ct. App. 1987) (issues not briefed on appeal are deemed abandoned.)

application of that law to the "facts," that is, the allegations in the complaints. These are questions of law we review de novo. *See Zurich Am. Ins. Co. v. Wisconsin Physicians Servs. Ins. Corp.*, 2007 WI App 259, ¶ 11, 306 Wis. 2d 617, 743 N.W.2d 710.

¶ 7.  Marks argues that the circuit court erroneously concluded that Houston Casualty did not breach its duty to defend Marks in the other lawsuits. Specifically, Marks argues that:  (1) because Houston Casualty made a unilateral decision to deny a defense to Marks in the other lawsuits, policy exclusions may not be considered when determining whether Houston Casualty breached its duty to defend; and (2) if exclusions are considered in deciding whether Houston Casualty breached its duty to defend, the exclusions here do not bar coverage for two alternative reasons, first because their plain language does not bar coverage and, second, because the exclusions are void because they create illusory coverage. We conclude that:  (1) policy exclusions are properly considered in determining whether Houston Casualty breached its duty to defend Marks; and (2) Houston Casualty did not breach its duty to defend because policy exclusion IV(b)(1) precludes coverage when assessed in light of the allegations in complaints against Marks, and because the policy exclusions do not create illusory coverage. Therefore, the circuit court correctly concluded that Houston Casualty did not breach its duty to defend in the other lawsuits.

¶ 8.  The overarching issue in this case is whether Houston Casualty breached its duty to defend Marks in the other lawsuits. To resolve this issue, we look only to the allegations contained within the four corners of the complaints in those suits and the terms of

the policy. *See Grieb v. Citizens Cas. Co. of N.Y.*, 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967) ("It is the nature of the claim alleged against the insured which is controlling even though the suit may be groundless, false or fraudulent . . . . Conversely stated, 'the insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case.' ").

¶ 9.   Normally, when determining whether an insurer has a duty to defend, courts look to allegations in a complaint and first compare them with a policy's initial grant of coverage and, if we find coverage, turn next to see if any exclusions preclude coverage. If we find any such exclusions, we look to see if any exceptions to the exclusions reinstate coverage. *See Preisler v. General Cas. Ins. Co.*, 2014 WI 135, ¶ 22, 360 Wis. 2d 129, 857 N.W.2d 136. In this case, we assume without deciding that the policy makes an initial grant of coverage and no exception to an exclusion has been raised. Therefore, our inquiry into whether Houston Casualty breached its duty to defend would presumably focus on whether there is an exclusion that applies to preclude coverage. However, Marks argues that where there is a unilateral failure or refusal by the insurer to defend the insured so that the question is whether the insurer has breached its duty to defend, the insurer is not permitted to argue that an exclusion justified its refusal to defend. In effect, Marks argues that a different duty to defend analysis applies when, as here, an insurer decides on its own not to provide a defense, and the issue later arises in a breach of duty to defend context. As we explain below, we disagree.

¶ 10. Marks's support for his argument can be summarized by a single paragraph from his appellant's brief:

In *Grube v. Daun*, 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992), the Court of Appeals, for the first time, clearly and explicitly stated that an insurer cannot look to exclusions or limiting language when unilaterally determining its duty to defend. *Id.* at 74–75 ("Rather than raising the issue in court, an insurer cannot deliberately reach its own conclusion on coverage and then maintain that a clause in the policy would have excused it from indemnifying had the coverage issue correctly been decided by a court originally.") Two years later, in *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 522 N.W.2d 261 (Ct. App. 1994), the court once again clearly, and unequivocally, reiterated the rule set forth in *Grube*:

The nature of that claim is such that—ignoring, as we must at this stage of the inquiry, both the merits of the claim and any exclusionary or limiting terms and conditions of the policies and, further, resolving all doubts in favor of the insured—we cannot say that there was no duty on Federated's part to defend the action, at least up to the point that its policy defenses to coverage were resolved.

[*Kenefick*,] 187 Wis. 2d at 232. Four years after *Kenefick*, the appellate court again reiterated the rule that when reviewing an insurer's duty to defend, the court's "inquiry at this stage is limited; we are required to ignore 'both the merits of the claim and any exclusionary or limiting terms and conditions of the policies.' " *Radke v. Fireman's Fund Ins. Co.*, 217 Wis. 2d 39, 44, 577 N.W.2d 366 [] (Ct. App 1998) (quoting *Kenefick*, 187 Wis. 2d at 232).

Marks accurately portrays the pertinent parts of *Grube*, *Kenefick*, and *Radke*. However, we agree with

the circuit court that in this respect the three cases impermissibly conflict with our earlier decision in *Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 427 N.W.2d 427 (Ct. App. 1988).

¶ 11. As Marks points out elsewhere in his briefing, *Grube* cites as authority our *Professional Office Bldgs.* decision. In *Professional Office Bldgs.*, we held that an insurer that had unilaterally denied a defense *and* breached its duty to defend under the policy was estopped from contesting coverage. *Id.* at 586. However, not only did we not provide support for the additional restriction stated in *Grube*, but in *Professional Office Bldgs.* we expressly relied upon both a policy endorsement and a policy exclusion when analyzing the underlying issue at hand: whether the insurer *had breached* its duty to defend. *See id.* at 583 (referring to the following endorsement: "The air taxi endorsement to the Airshield policy insured against damages resulting from the 'negligent operation, maintenance or use' of the aircraft."), and *id.* at 578 (referring to the exclusion: "While the policy excludes liability resulting from use of aircraft, there is an exception to the exclusion for 'liability arising out of operations performed by independent contractors.' ").

██

¶ 12. The estoppel rule that we stated in *Professional Office Bldgs.* comes into play when an insurer, having received notice of a lawsuit, unilaterally declines to provide a defense, and the insured subsequently sues or joins the insurer as a party seeking to hold the insurer liable for defense costs already incurred, to compel the insurer to provide a defense going forward, or to compel the insurer to provide coverage under the policy. In those circumstances, the insurer forfeits its right to contest coverage under the

estoppel rule if the insurer has breached its duty to defend as determined by a comparison of the facts alleged in the complaint against the insured with the full policy provisions. Nothing in *Professional Office Bldgs.* suggests that, in making this determination, courts should deviate from the usual methodology of determining duty to defend that we outline above in ¶ 9.

¶ 13.  In *Grube*, we seemingly failed to recognize the nature of the estoppel rule in *Professional Office Bldgs.* Contrary to the approach that we applied in *Professional Office Bldgs.*, in *Grube* and more explicitly in *Kenefick* and *Radke*, we imposed a different and illogical hurdle for insurers. We drew a distinction between initial coverage provisions and other parts of policies, in particular exclusions. *See Grube*, 173 Wis. 2d at 74–75; *Kenefick*, 187 Wis. 2d at 232; and *Radke*, 217 Wis. 2d at 44. We effectively said in these cases, contrary to *Professional Office Bldgs.*, that if the duty to defend arises as an issue after an insurer unilaterally declines to provide a defense and the insured claims the insurer breached its duty to defend, the duty to defend test is different. In that situation, according to these decisions, it matters not how plainly an exclusion might apply; rather the question whether the insurer has breached its duty to defend is determined by comparing the facts alleged in the complaint with *only* the initial coverage portion of the policy. Not only do these cases fail to follow *Professional Office Bldgs.* in this respect, but they deviate as well from the supreme court precedent upon which *Professional Office Bldgs.* rests.

¶ 14.  *Professional Office Bldgs.* relies on three prior cases to support its method of determining whether an insurer had breached its duty to defend.

516

Two of those cases involved discussion and application of exclusions.[2] In *Grieb*, the supreme court applied an intentional acts exclusion[3] to affirm a summary judgment dismissing a claim that an insurer had breached its duty to defend. *Grieb*, 33 Wis. 2d at 556–57. In *Sola Basic Indus., Inc. v. U. S. Fidelity & Guar. Co.*, 90 Wis. 2d 641, 646–54, 280 N.W.2d 211 (1979), the supreme court found coverage after an extensive analysis of a products and work performed exclusion[4] to property damage liability coverage.

¶ 15.    To the extent, then, that in *Grube, Kenefick* and *Radke* we modified *Professional Office Bldgs.* as we have described, we agree with the circuit court that we lacked the authority to do so under *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (the court of appeals "must speak with a unified voice" and may not overrule, modify or withdraw language from its

---

[2] The third case, *Nichols v. American Emp'rs Ins. Co.*, 140 Wis. 2d 743, 750, 412 N.W.2d 547 (Ct. App. 1987), involved interpretation of the insuring clause, with no reference to exclusions.

[3] The exclusion provided:   "The policy excluded from coverage dishonest, fraudulent, criminal or malicious acts or omissions and those of a knowingly wrongful nature intentionally committed." *Grieb v. Citizens Cas. Co. of N.Y.*, 33 Wis. 2d 552, 556, 148 N.W.2d 103 (1967).

[4] The exclusion provided:

"Exclusions:   This insurance does not apply:

[] to property damage to the Named Insured's products arising out of such products or any part of such products; [] to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith . . . ."

*Sola Basic Indus., Inc. v. U. S. Fidelity & Guar. Co.*, 90 Wis. 2d 641, 646, 280 N.W.2d 211 (1979).

prior published decisions.) Likewise, court of appeals cases may not conflict with supreme court precedent. *Id.* (the supreme court is the only court in the State of Wisconsin with the power to "overrule, modify or withdraw language from a previous supreme court case.") Consequently, *Grube, Kenefick* and *Radke* do not establish precedent for the modification of how a claim of breach of duty to defend is evaluated. *See, e.g., State v. Bolden,* 2003 WI App 155, ¶ 9–11, 265 Wis. 2d 853, 667 N.W.2d 364 ("[*State v. Kuehl,* 199 Wis. 2d 143, 545 N.W.2d 840 (Ct. App. 1995)] lacked the power to overrule [*State v. Jackson,* 187 Wis. 2d 431, 523 N.W.2d 126 (Ct. App. 1994)]. Under *Jackson,* the State's questions here did not violate the [*State v. Haseltine,* 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984)] rule. Accordingly, Bolden's trial lawyer was not deficient for not objecting to those questions or moving for a mistrial.").

¶ 16.   We note that *Grube, Kenefick* and *Radke* do not merely conflict with *Professional Office Bldgs.,* they unnecessarily create a modified duty to defend test that is counterintuitive and confusing. Why should it matter whether a policy plainly denies coverage in one section or another? By using the normal duty to defend test to assess whether the insurer has breached its duty to defend, *Professional Office Bldgs.* provides a strong incentive to insurers to provide a defense to insureds, even when the insurer contests its obligation to provide coverage. The substantial benefit to insurers of providing an initial defense and promptly litigating the duty to defend is that, if the insurer is wrong in its assessment that it has no duty to defend, the insurer does not forfeit its right to contest coverage based on the facts, as further developed in discovery or as found by a fact finder. Under

the *Professional Office Bldgs.* estoppel rule, if the insurer unilaterally denies a defense, it runs the risk that it will be required to provide coverage, even if later it can be shown that its policy does not provide coverage under the developed facts. The risk of being wrong is ample incentive for insurers to err on the side of caution, without the additional burden imposed by *Grube*.

¶ 17.  In any event, regardless of the desirability of the *Grube* approach, we are bound by our earlier decision in *Professional Office Bldgs.* Thus, we conclude that the circuit court correctly assessed whether Houston Casualty breached its duty to defend by comparing the allegations in the complaints against Marks in the other lawsuits with the full Houston Casualty policy, including exclusions. Consequently, we turn our attention to whether the circuit court correctly determined that an exclusion in Marks's policy precludes coverage in light of the allegations made in the complaints against Marks.

¶ 18.  In this case, we first look to the six complaints relating to the six lawsuits for which Marks seeks representation and coverage under his Houston Casualty policy. We briefly summarize the relevant allegations against Marks in each of those complaints:

- *Oblio Telecom v. Hawaii Global Exchange, Inc.*, No. 3:08–CV-0120–K (N.D. Tex.), is a civil lawsuit. Marks and Titan are named as defendants in Hawaii Global's counterclaim, which describes a single count of conspiracy to commit fraud. The counterclaim describes Marks as "a principal shareholder and equitable owner of Titan." There is no mention in the counterclaim of ITC or ITC2, nor of Marks being involved in Titan by virtue of his

519

status as trustee. In an amended counterclaim, allegations are added describing ITC and ITC2 as alter egos of a co-defendant, Frank Crivello, and describing Marks as the nominal trustee of both trusts. However, there is no allegation that Marks is being sued in his capacity as trustee.

- *Near v. Crivello*, No. 09–CV-2233 JWL/JPO (D. Kan.), is a civil lawsuit. Marks is a named defendant and is described as "the Chairman of Titan and, through one or more of his business entities, a shareholder of Titan." The complaint describes Marks as taking, in concert with others, personal actions that constitute the basis of the complaint, and does not mention ITC or ITC2. Marks is named in multiple counts in the complaint: fraud, fraudulent inducement, negligent misrepresentation, fraud by silence, conversion, and civil conspiracy.

- *Miller v. Greystone Bus. Credit II, LLC*, No. 09–50100 (BLS) (Bankr. D. Del.), is an adversary proceeding within the bankruptcy of USA Detergents, Inc. The complaint alleges that: "Marks became the Chairman of the Board of Directors of USAD at some point after August 1, 2007. At all material times hereto, Marks was also the Chairman of Titan and a Member of Crivello Group." The complaint does not mention ITC or ITC2. Marks is named in two of the complaint's nine counts: breach of fiduciary duty, and civil conspiracy.

- *ILDN West, LLC v. Titan Global Holdings , Inc.*, No. BC404478 (Cal.), is a civil lawsuit. The Complaint alleges: "At all times relevant hereto, Marks was a Chairman of Titan and represented Oblio, Titan Communications and Planet Direct." The complaint does not mention ITC or ITC2. Marks is named in one of the seven causes of action: fraud.

520

- *Houillion v. Chance*, No. CC-09–02482–C (Tex.), is a civil action. The complaint describes Marks as "Chairman of the Board for Defendant Titan Global Holdings, Inc.," and does not mention ITC or ITC2. Marks is named in three counts: breach of contract, negligence and fraud.

- *Appalachian Oil Company, Inc. v. Titan Global Holdings, Inc.*, No. 2:09–bk-50259 (Bankr. E.D. Tenn.), is an adversary proceeding within the bankruptcy of Appalachian Oil Company, Inc. (Appco). The complaint describes Marks as "a member of Appco's Board of Directors at all times relevant to this Complaint. Defendant Marks is an 'insider' of Appco as defined in § 101(31) of the Bankruptcy Code." The complaint does not mention ITC or ITC2. A personal claim is made against Marks only as to one of the six counts in the complaint, to recover wrongful distributions to shareholders.

¶ 19.   We next turn to the exclusion at issue in this case, which provides:

IV. EXCLUSIONS

This Policy does not apply either directly or indirectly to any Claim and Claim Expenses:

. . . .

(b) For liability arising out of the Insured's services and/or capacity as:

(1) an officer, director, partner, trustee, or employee of a business enterprise not named in the Declarations or a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust.

■
¶ 20.   In interpreting an insurance policy, we give words their plain and ordinary meaning. *See Goldstein v. Lindner,* 2002 WI App 122, ¶ 12, 254 Wis. 2d 673,

648 N.W.2d 892. If the words of a contract convey a clear and unambiguous meaning, our analysis ends. *Id*. Here, we find no ambiguity.

¶ 21.   The clear and unambiguous meaning of the exclusion is that the policy provides no coverage for service as an officer, director, partner, trustee or employee of a business enterprise not named in the policy's Declarations. The only profession named in the Declarations is "[s]olely in the performance of services as the Trustee of the [ICT], and/or [ICT2], for a fee." Applying the unambiguous meaning of the policy language to the allegations in the six complaints, it is clear that the exclusion applies. First, none of the complaints indicate that Marks is being sued in his capacity as trustee of either trust. Second, each of the complaints names Marks as being sued in his capacity as an officer, director, partner, trustee, or employee of some entity other than ICT or ICT2. As summarized above:   in *Oblio Telecom*, Marks is being sued for his role in Titan; in *Near*, as chair of Titan; in *Miller*, as chair of USAD and of Titan, as well as a member of something called Crivello Group; in *ILDN West, LLC*, as chair of Titan and as a representative of entities known as Oblio, Titan Communications and Planet Direct; in *Houillion*, as chair of Titan Global Holdings, Inc., and in *Appalachian Oil Company*, as a member of Appco's board of directors. None of these entities is named in the Declarations of the policy.

¶ 22.   Marks argues that the policy exclusions in the Houston Casualty policy do not bar coverage. However, Marks's argument focuses on a policy exclusion—the intentional acts exclusion—which is not at issue in this appeal. Marks fails to develop an argument as to whether exclusion IV(b)(1) bars coverage. As we have shown above, the plain language of

that exclusion, when compared with the allegations within the four corners of the six complaints at issue, clearly and unambiguously excludes coverage. The parties do not assert that there is any exception to the exclusion, and we are aware of none. Accordingly, we conclude that exclusion IV(b)(1) precludes coverage when measured against the allegations in the complaints.

■■■■■

¶ 23.   Marks argues that regardless of whether the plain language of the exclusion precludes coverage, the policy should be construed as providing coverage because other language within the exclusion renders the policy illusory.[5] Coverage is illusory if the policy language defines coverage in a manner such that coverage will never actually be triggered. *Continental W. Ins. Co. v. Paul Reid, LLP, GPS, Inc.*, 2006 WI App 89, ¶ 7, 292 Wis. 2d 674, 715 N.W.2d 689. If the policy is illusory, we will reform the policy to meet the insured's reasonable expectation of coverage. *Id.*

---

[5] Marks also argues that the language of the exclusion is ambiguous. Language is ambiguous if it is " 'fairly susceptible to more than one reasonable interpretation.' " *Preisler v. General Cas. Ins. Co.*, 2014 WI 135, ¶ 19, 360 Wis. 2d 129, 857 N.W.2d 136 (quoted source omitted). If language in an insurance policy is ambiguous, the ambiguity is resolved in favor of coverage. *Id.*, ¶ 20. We have already concluded that the language of the exclusion is clear and unambiguous. Moreover, Marks's ambiguity argument merely tracks his illusory argument, and as we proceed to explain, he provides no support for his conclusory statement that his strained interpretation in his attempt to show illusory coverage is a reasonable one so as to create an ambiguity. Marks therefore fails to develop an argument that the language is ambiguous, and we do not consider the topic separately from his argument that the policy is illusory.

¶ 24. Marks argues that the policy is illusory, not because the exclusion is problematic as applied to the factual circumstances of this case, but rather because the exclusion can be interpreted to create illusory coverage in a totally different respect. Marks's illusory coverage argument focuses on the language of Exclusion IV(b)(1), which provides that there is no coverage for the insured's service as: "an officer, director, partner, trustee, or employee of a business enterprise *not named in the Declarations* or a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust." (Emphasis added.) Marks argues that because the qualifying phrase "*not named in the Declarations*" is placed before the words "or a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust," the qualifying phrase "*not named in the Declarations*" does not apply to trusts. Therefore, according to Marks, the exclusion bars coverage for all trusts, whether or not they are named in the Declarations. Accordingly, Marks asserts that we should read the exclusion as barring "liability arising out of the Insured's services and/or capacity as . . . trustee . . . of a . . . trust," and that as a result coverage does not apply to his service as trustee of ICT and ICT2, even though those trusts are named in the policy declarations.

¶ 25. If Marks's interpretation of the language is reasonable, then the policy might indeed be illusory, as there would be no circumstance under which it could apply. However, Marks's interpretation of the language is not reasonable. As can be seen in the last sentence of the preceding paragraph, in order to construct his reading of the exclusion, Marks takes language from one part of the exclusion and appends it to

language from a completely different part of the exclusion, while ignoring, without explanation, all of the language in between, including the qualifying phrase *"not named in the Declarations."* Marks offers no authority or rule of construction in support of his conclusory statement that the exclusion can be reasonably interpreted as he suggests. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown,* 2002 WI App 300, ¶ 4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (generally, this court does not consider conclusory assertions and undeveloped arguments).

¶ 26.  Rather, the only reasonable reading of the language apparent to us is that the second part of the exclusion "or a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust" is explanatory language that gives broader meaning to the term "business enterprise" earlier in the exclusion. We note that the term "trustee" appears in the first part of the exclusion, prior to the phrase *"not named in the Declarations,"* leading to the inference that the word "trustee" refers to a "trust" in the second part, after the term *"not named in the Declarations"* and that the language in between is relevant to understanding the relationship between the two words:  "trustee" and "trust." Otherwise, one of the two would be mere surplusage. A trustee has no purpose without a trust and a trust generally needs to have a trustee. Proposing that a trustee could be named in the Declarations, while the trust for which the trustee serves could not, renders the presence of one of these two words in the exclusion meaningless. The trustee of a trust cannot be both covered because the trustee is named in the declarations, and also not covered because the trustee is the trustee of a trust. We

525

do not interpret language as though it were mere surplusage or reaches an absurd result. *See Goebel v. First Fed. Sav. and Loan Ass'n of Racine*, 83 Wis. 2d 668, 680, 266 N.W.2d 352 (1978) ("a contract is to be construed so as to give a reasonable meaning to each provision of the contract, and that courts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage"), and *Blasing v. Zurich Am. Ins. Co.*, 2014 WI 73, ¶ 15, 356 Wis. 2d 63, 850 N.W.2d 138 (" 'insurance policies should be given a reasonable interpretation and not one which leads to an absurd result' ").

¶ 27. The fact that Marks is named in the Declarations as a trustee of two trusts provides further support for our conclusion that the "trust[s]" named in the exclusion are likewise limited to trusts not specified in the Declarations. Houston has not claimed that the exclusion applies to Marks's service as trustee of ICT and ICT2. In sum, Marks does not persuade us that the policy is illusory.

¶ 28. In sum, we conclude that the circuit court correctly determined that the Houston Casualty policy does not provide coverage to Marks when measured against the allegations in the six complaints, and that the circuit court correctly determined that Houston Casualty did not breach its duty to defend Marks.

## CONCLUSION

¶ 29. For all of the reasons explained above, we affirm the decision of the circuit court.

*By the Court.*—Judgment affirmed.