Water Well Solutions Service Group Inc.,
Plaintiff-Appellant,†

v.

Consolidated Insurance Company,
Defendant-Respondent.

Court of Appeals

*No. 2014AP2484. Submitted on briefs May 20, 2015.
—Decided September 9, 2015.*

2015 WI App 78

(Also reported in 871 N.W.2d 276.)

† Petition for Review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Lee M. Seese* of *Michael Best & Friedrich LLP*, Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *William J. Katt* and *Christina A. Katt* of *Wilson Elser Moskowitz Edelman & Dicker LLP*, Milwaukee.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. NEUBAUER, C.J. This is an insurance coverage dispute arising out of the allegedly negligent installation of a water pump in a municipal well. In the underlying complaint, the subrogated insurer of the municipal utility sued the water well contractor, alleging negligent work. The water well contractor tendered its defense and indemnity to its commercial general liability insurer, which denied any duty to defend or

indemnify. That case settled. The water well contractor then brought this action against its insurer, alleging breach of the duty to defend and bad faith. The circuit court granted summary judgment to the insurer, finding that the underlying complaint did not allege a covered claim because certain business risk exclusions applied. The water well contractor urges us to look outside the four corners of the complaint to find coverage. We decline this invitation to depart from the well-established Wisconsin rule that the allegations in the complaint are what we look at to determine whether there is a duty to defend. The water well contractor also argues that we should ignore the exclusions in the policy when determining the duty to defend. This would also be a departure from established Wisconsin law. We affirm the circuit court's grant of summary judgment to the insurer.

## BACKGROUND

¶ 2. In May 2009, the city of Waukesha hired Water Well Solutions Service Group Inc., (Water Well) to remove the old pump and install a new pump at its Well #10. Water Well installed the pump, including providing and installing new pipe and rethreading pipe as needed. In February 2011, the pump unthreaded and separated from the pipe column and fell to the bottom of the 1910–foot-deep well. Argonaut Insurance Company, Waukesha Water Utility's insurer, filed suit in United States District Court for the Eastern District of Wisconsin against Water Well, alleging negligence and breach of contract and seeking $300,465.48 in damages. Water Well tendered its defense to its insurer, Consolidated Insurance Company, which denied coverage and did not provide a defense. Consolidated indicated that the grounds for denial

were, among other exclusions, the "your product" and "your work" exclusions. Water Well ended up settling the case for $87,500.

¶ 3. On February 5, 2014, Water Well filed this lawsuit against Consolidated, claiming that at least some of the damages alleged in the underlying complaint were covered, and therefore Consolidated had breached its duty to defend Water Well. Water Well and Consolidated both moved for summary judgment, and the circuit court granted summary judgment to Consolidated and denied Water Well's motion. The circuit court concluded that, under well-settled Wisconsin law, the insurer's duty to defend is determined by reviewing the four corners of the underlying complaint, without resort to extrinsic evidence. Furthermore, ruled the circuit court, when making this coverage determination, the court must consider all the terms of the insurance policy, including the exclusions. The circuit court concluded that there was no covered claim alleged in the underlying complaint because of the "your product" and "your work" exclusions. Thus, Consolidated did not have a duty to defend. Water Well appeals.

## DISCUSSION

### Standard of Review

¶ 4. On review of a grant of summary judgment, we apply the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2013–14).[1]

> For purposes of summary judgment here, there are no material disputed facts because the duty-to-defend law that we apply requires that we look to the allegations in the complaint[] . . . and there is no dispute regarding what those allegations are. What remains is the correct interpretation of duty to defend law and the application of that law to the "facts," that is, the allegations in the complaint[]. These are questions of law we review de novo.

*Marks v. Houston Cas. Co.*, 2015 WI App 44, ¶ 6, 363 Wis. 2d 505, 866 N.W.2d 393, *review granted* (WI June 15, 2015) (No. 2013AP2756).

## *The Underlying Complaint*

¶ 5. To see if Water Well has a cause of action for breach of the duty to defend, we start with the underlying complaint from Argonaut's suit against Water Well. The underlying complaint alleged, among other things, that between May and September 2009, Water Well installed a submersible pump for Waukesha and that the pumping system included a column of pipes, screws, couplings, pump, seal, motor and pump cable (collectively the Well Pump).

> 10. Upon information and belief, from on or about May to September of 2009, Water Well installed the Well Pump, including but not limited to performing inspections and repairs of the well, providing a new

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

Centrilift pump, seal, and motor, providing new heavy wall column pipe, providing new pump cable, providing flow sleeve if required, providing check valves as needed, providing pipe couplings as needed, rethreading pipe as needed, providing two new air lines, reassembling pipe work, performing a video log, and setting-up and testing the pumping equipment and testing the pump ("Original Installation").

11. Upon information and belief, in or about September to December of 2009, Water Well reinstalled the Well Pump, including but not limited to, cutting and rethreading twelve-inch heavy wall pipe, replacing couplings, replacing the seal, and replacing the motor.

12. On or about January of 2010, Water Well also reinstalled the Well Pump, including but not limited to, cutting and rethreading at least 17 ends, installing at least 7 new couplings, and installing at least 1 new fourteen-foot section of pipe (collectively, the "Reinstallations").

. . . .

14. Upon information and belief, while performing the Reinstallations, Water Well failed to install two setscrews, where locations for two setscrews were located to secure the pipe joint at each end, which allowed operating torques and vibrations to cause the Well Pump to rotate and unthread from the pipe column and caused the Well Pump to fall to the bottom of the well.

15. As a direct and proximate result of the foregoing, on or about February 6, 2011, the Well Pump unthreaded and separated from the pipe column and caused the Well Pump, including the motor, to fall to the bottom of the approximately 1910–foot-deep well.

. . . .

18. Upon information and belief, Water Well, its agents, employees and representatives, had a duty to reasonably and prudently install, configure, inspect, test, and/or perform the Reinstallations in such a manner as to prevent operating torques and vibrations from causing the Well Pump to rotate and unthread from the pipe column and cause the Well Pump to fall to the bottom of the well.

19. Upon information and belief, Water Well, its agents, employees and representatives breached that duty by failing to reasonably and prudently install, configure, inspect, test, and/or perform the Reinstallations in such a manner as to prevent operating torques and vibrations from causing the Well Pump to rotate and unthread from the pipe column and cause the Well Pump to fall to the bottom of the well.

20. Specifically, Water Well breached that duty by failing to install two setscrews, where locations for two setscrews were located to secure the pipe joint at each end, which allowed operating torques and vibrations to cause the Well Pump to rotate and unthread from the pipe column and caused the Well Pump to fall to the bottom of the well.

21. Upon information and belief, Water Well, its agents, employees and representatives also breached that duty by failing to reasonably and prudently perform the Reinstallations so as to discover the hazardous condition that the Well Pump's operation was causing the pipe threads to become excessively worn, was indicating that the pipe threads were possibly out of round, was causing marks from a part dragging axially over the pipe thread tips, and/or that the pump was pulling out of collar; and, this hazardous condition of the Well Pump's operation allowed operating torques and vibrations to cause the Well Pump to rotate and unthread from the pipe column and caused the Well Pump to fall to the bottom of the well.

231

¶ 6. To determine whether there is a duty to defend, we first consider whether the insurance policy provides an initial grant of coverage for the claims asserted in the complaint. *Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, ¶ 22, 311 Wis. 2d 548, 751 N.W.2d 845 (*Sustache II*). If there is an initial grant of coverage, we look at the policy's exclusions to see if any apply to preclude coverage. *Id.*, ¶ 23. If an exclusion applies, we examine the policy to determine if there is an exception to the exclusion that would restore coverage. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65. In this analysis, we use the facts as alleged in the four corners of the complaint. *Elliott v. Donahue*, 169 Wis. 2d 310, 320–21, 485 N.W.2d 403 (1992). An insurer has a duty to defend only if the facts alleged in the complaint, if proved, would result in liability for the insured that arguably would be covered under the terms and conditions of the insurance policy. *Id.* The four-corners rule means that we must determine the insurer's duty to defend without considering extrinsic facts or evidence. *Sustache II*, 311 Wis. 2d 548, ¶ 27; *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 19, 261 Wis. 2d 4, 660 N.W.2d 666. Furthermore, the court compares the facts as alleged in the complaint to the insurance policy as a whole, including the exclusions and exceptions. *Preisler v. General Cas. Ins. Co.*, 2014 WI 135, ¶ 22, 360 Wis. 2d 129, 857 N.W.2d 136; *American Girl*, 268 Wis. 2d 16, ¶ 24; *Elliott*, 169 Wis. 2d at 320–21.

¶ 7. The Consolidated policy covers property damage caused by an occurrence. The underlying complaint alleges that Water Well's failure to reasonably and prudently install and reinstall the Well Pump allowed torques and vibrations that caused the Well Pump to unthread and fall to the bottom of the 1910–foot-deep well. Consolidated does not dispute that there is an initial grant of coverage, but instead relies on the application of exclusions. The circuit court ruled, and Consolidated argues, that two exclusions bar coverage: the "your product" and "your work" exclusions.

## Your Product

■■

¶ 8. We first discuss the "your product" exclusion, which precludes coverage for " 'Property damage' to 'your product' arising out of it or any part of it." "Property damage" means physical injury to tangible property, including the resulting loss of use of that property and loss of use of tangible property that is not injured. "Your product" means "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" the insured. The "your product" exclusion operates to bar coverage for the insured's own faulty product. *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 264–65, 371 N.W.2d 392 (Ct. App. 1985).

¶ 9. Water Well notes that the underlying complaint defines the Well Pump to include "a column of pipes" and alleges damage to that pipe column and, specifically, at paragraph twenty-one, to the threads. However, Water Well suggests, some of the pipes were not Water Well's product. Specifically, Water Well

points to the allegation in paragraph ten that rethreading pipe was to be done as needed with the original installation, and, in paragraphs eleven and twelve, that rethreading was also done with the reinstallation, and argues that it is reasonable to infer that at least some of the allegedly damaged pipe was old, preexisting pipe that was not part of Water Well's product. While acknowledging that new pipe it sold to Waukesha would be subject to the "your product" exclusion, Water Well argues that because there is a reasonable inference of damage to pre-existing pipe, i.e., property other than Water Well's product, there is coverage.

¶ 10. As Water Well acknowledges, the underlying complaint defined the Well Pump installed by Water Well to include a "column of pipes." Water Well provided "new heavy wall column pipe." The complaint alleges that Water Well's installation and reinstallation resulted in excessively worn threads and ultimately "cause[d] the Well Pump to rotate and unthread from the pipe column and caused the Well Pump to fall to the bottom of the well." There is no allegation of damage to pipe or column pipe installed, supplied or handled by anyone but Water Well. There is no allegation that there was pre-existing pipe. Allegations of rethreading do not provide a reasonable inference that someone else's pipes were involved, much less damaged. The circuit court was correct in determining that the "your product" exclusion applies to bar coverage.

## Your Work

¶ 11. The circuit court also concluded that the "your work" exclusion barred coverage. This exclusion precludes coverage for

**l. Damage To Your Work**

> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"Your work" means work or operations performed by or on behalf of the insured, and "[m]aterials, parts or equipment furnished in connection with such work or operations." The "products-completed operations hazard" includes property damage occurring away from the insured's premises and arising out of "your product" or "your work" except for work that has not been completed. "Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." The provision excludes coverage of the negligent performance of a contractor's work that did not occur on the contractor's property and was completed at the time of the occurrence. *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, ¶¶ 62–63, 311 Wis. 2d 492, 753 N.W.2d 448.

¶ 12. Acknowledging that the "your work" exclusion applies, Water Well argues only that the subcontractor exception to the "your work" exclusion restores coverage. As quoted above, there is an exception to the "your work" exclusion that restores coverage when "the work out of which the damage arises was performed on your behalf by a subcontractor." Water Well maintains that the use of subcontractors is so prevalent in construction projects that it is reasonable to infer that a subcontractor was used in this project, even though the complaint does not allege that a subcontractor was used.

235

¶ 13. The underlying complaint alleges damage caused by Water Well's negligent work that occurred away from Water Well's property and was complete at the time the damage occurred. There is no allegation that any work was performed by a subcontractor. The "your work" exclusion applies and the subcontractor exception does not.

¶ 14. Water Well makes two additional arguments against application of the exclusions discussed above. First, Water Well urges us to depart from the four-corners rule and rely on extrinsic evidence to determine that the underlying complaint states facts that are arguably covered and thus triggers Consolidated's duty to defend. Second, Water Well argues that the circuit court could not consider exclusions in the policy when determining if there was a duty to defend. We address each in turn.

*Proposed Departure from the Four-Corners Rule*

¶ 15. Water Well argues that there are undisputed facts, albeit outside the underlying complaint, that preclude application of the "your product" and "your work" exclusions. First, Water Well argues that the undisputed facts show that there was damage to pipe that was not Water Well's product. Water Well relies on the affidavit of Steve Judkins, who averred that some of the pipe was pre-existing and did not need to be recut or rethreaded by Water Well. So, argues Water Well, there was damage to property other than Water Well's product, and therefore the claim is arguably covered, and Consolidated had a duty to defend. Second, while the underlying complaint says nothing about work done by a subcontractor, Water Well again relies on Judkins's affidavit, in which he avers that some of the subject work was performed by A.F.

236

Seideman Company, Inc. The use of a subcontractor triggers the subcontractor exception to the "your work" exclusion, thus providing arguable coverage and a duty to defend. Under both these theories, Water Well urges us to depart from the four-corners rule to consider extrinsic evidence, that is, facts not alleged within the four corners of the complaint, in making our determination of the duty to defend.

¶ 16. Wisconsin law is well settled that an insurer's duty to defend is determined by comparing the facts alleged within the four corners of the complaint with the coverage provided under the insurance policy. *Preisler*, 360 Wis. 2d 129, ¶ 21; *Sustache II*, 311 Wis. 2d 548, ¶ 20; *Doyle v. Engelke*, 219 Wis. 2d 277, 284–85, 580 N.W.2d 245 (1998); *Marks*, 2015 WI App 44, ¶ 8.[2] It is only when the insurer provides a defense while contesting indemnity coverage that the court may look at extrinsic evidence in deciding whether there is indemnity coverage. *Sustache II*, 311 Wis. 2d 548, ¶¶ 28–29. Water Well argues that this rule favors insurers because it "would reward insurers who outright deny coverage instead of following the 'proper procedure' in Wisconsin—defending under a reservation of rights." But the insurer denies coverage at its

---

[2] The exceptions to the four-corners rule discussed in *Grieb v. Citizens Casualty Co. of New York*, 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967), were neither applied nor accepted. *See Doyle v. Engelke*, 219 Wis. 2d 277, 284–85 & n.3, 580 N.W.2d 245 (1998) (citing *Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 580, 427 N.W.2d 427 (Ct. App. 1988)). *Professional Office Buildings* confirmed that long-standing Wisconsin precedent has established that "the rule of *Grieb* . . ., and similar cases, is controlling and compels the determination that the duty to defend is dependent solely on the allegations of the complaint." *Professional Office Bldgs.*, 145 Wis. 2d at 580–81.

own peril. *See Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 584–85, 427 N.W.2d 427 (Ct. App. 1988) (noting that if insurer breaches the duty to defend, it loses its ability to contest indemnity coverage). The four-corners rule is the rule in Wisconsin. *Priesler*, 360 Wis. 2d 129, ¶ 21; *Sustache II*, 311 Wis. 2d 548, ¶ 20; *Doyle*, 219 Wis. 2d at 284 n.3 (noting long line of cases indicating that courts are to make coverage decisions based on the allegations in the complaint); *Professional Office Bldgs.*, 145 Wis. 2d at 580–82; *Marks*, 2015 WI App 44, ¶ 8. We cannot depart from this well-established precedent.

*Consideration of Policy's Exclusions*

¶ 17. Water Well next argues that the court may not consider exclusions when making its determination on the duty to defend. Our supreme court has repeatedly held that the determination of a duty to defend is based on the entire policy, including exclusions. *See Preisler*, 360 Wis. 2d 129, ¶ 22; *American Girl*, 268 Wis. 2d 16, ¶ 24; *Elliott*, 169 Wis. 2d at 320–21; *see also Marks*, 2015 WI App 44, ¶¶ 12–17.[3]

---

[3] Water Well relies on language in *Radke v. Fireman's Fund Insurance Co.*, 217 Wis. 2d 39, 44, 577 N.W.2d 366 (Ct. App. 1998), for the proposition that the court must ignore exclusionary language when determining whether the insurer had a duty to defend. *Radke* relied on *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 232, 522 N.W.2d 261 (Ct. App. 1994), and *Kenefick* cited no authority for the proposition that the court must ignore exclusionary terms of the policy when the insurer denies its duty to defend. *See* SHEILA SULLIVAN, ET AL., ANDERSON ON WISCONSIN INS. LAW, § 7.23 (7th ed. 2015). As was further noted in ANDERSON ON WISCONSIN INSURANCE LAW, the intentional acts exclusion upon which the insurer relied did not apply to the negligent infliction of emotional distress claim, which triggered the duty to defend, rendering the language in *Radke*

## CONCLUSION

¶ 18. The circuit court correctly determined that Consolidated had no duty to defend Water Well in light of the facts alleged in the underlying complaint and the terms of the Consolidated policy. The circuit court was correct to base its determination on the four corners of the underlying complaint and not to consider extrinsic evidence. Finally, the circuit court was correct to consider all the terms of the policy. We affirm the order of the circuit court.[4]

*By the Court.*—Order affirmed.

¶ 19. REILLY, P.J. (*dissenting*). I respectfully dissent as I do not believe the four-corners rule is "well-established" in Wisconsin. Majority, ¶ 1. Rather, the

upon which Water Well relies unnecessary to its holding. *See* SULLIVAN, ET AL., *supra* (citing *Radke*, 217 Wis. 2d at 47).

[4] Although neither party addressed the potential for an independent claim based solely on the duty to indemnify, one of the dissent's criticisms of the four-corners rule is that a decision on the duty to defend necessarily determines the duty to indemnify. That is not an issue that was addressed here, and it is not uniformly agreed upon. *See* ALLAN D. WINDT, 2 Insurance Claims and Disputes: Representation of Insurance Companies & Insureds § 6:10 (6th ed. 2013) (fact that insurer does not have duty to defend does not mean that it might not ultimately have a duty to indemnify); *see also Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252–55 (5th Cir. 2011) (duty to defend, based on allegations in complaint and terms of policy, is separate and distinct from duty to indemnify, based on actual facts); *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692–93 (7th Cir. 1995) (duty to defend distinct from duty to indemnify and may be decided separately); *Interstate Packaging Co. v. Century Indem. Co.*, No. 3:11–cv–00589, unpublished op., 2013 WL 1335120, at *6–8 (M.D. Tenn. Mar. 29, 2013) (discussing flaws in "blanket rule" that no duty to defend necessarily implies to duty to indemnify).

rule is fraught with ambiguity: we have two court of appeals decisions that conflict on the question of whether exceptions to the four-corners rule are recognized in Wisconsin[1] and one supreme court case that implies exceptions do exist.[2]

¶ 20. Despite this court's conclusion that the cases departing from the four-corners rule had been "tacitly overruled," *Estate of Sustache v. American Family Mut. Ins. Co.*, 2007 WI App 144, ¶ 21, 303 Wis. 2d 714, 735 N.W.2d 186, we have no supreme court decision explicitly saying so, *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). In 2010, we certified the question of whether the four-corners rule governs an insurer's duty to defend. The supreme court accepted the certification. *Wilkinson v. Arbuckle*, 2011 WI 1, 330 Wis. 2d 442, 793 N.W.2d 71. Unfortunately for the bench and bar, the parties voluntarily dismissed the appeal upon the court accepting the certification.

¶ 21. The viability or scope of the four-corners rule requires a clear answer from our supreme court. The four-corners rule as defined by the majority allows a litigant who is not a party to a contract of insurance to unilaterally control whether a contract (the insurance policy) provides coverage when that litigant has no privity in the contract.

---

[1] *Compare Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 580–81, 427 N.W.2d 427 (Ct. App. 1988) ("the duty to defend is dependent solely on the allegations of the complaint"), *with Berg v. Fall*, 138 Wis. 2d 115, 122–23, 405 N.W.2d 701 (Ct. App. 1987) (noting that an insurer's duty to defend is not limited by the allegations in the complaint).

[2] *Grieb v. Citizens Cas. Co.*, 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967) ("There are at least four exceptions to the [four-corners] rule . . . and generally the insurer who declines to defend does so at his peril.").

¶ 22. A simple example suffices: Plaintiff Doe files a complaint with the sole allegation that Defendant Doe intentionally struck him causing injuries. Defendant Doe's insurer refuses, pursuant to the four-corners rule, to provide a defense or coverage as the policy expressly precludes coverage for intentional acts. The true facts, however, are that Plaintiff Doe was an intruder into Defendant Doe's home and Defendant Doe injured Plaintiff Doe in the course of defending himself. The rigid application of the four-corners rule does not allow Defendant Doe to challenge Plaintiff Doe's characterization of the dispute as it relates to the question of insurance applicability.

¶ 23. In this case, Water Well presented evidence that it used a subcontractor to cut and rethread the pipe for the well pump. All of the damages alleged in the complaint against Water Well were caused by the unthreading of the well pump from the pipe column. As Water Well presented evidence that the damages alleged in the complaint were arguably not a result of its work or product, but instead that of a subcontractor, it should have been provided a defense by Consolidated and possibly coverage. Because of the application of the four-corners rule, however, Consolidated successfully argued that it was absolved from providing both the defense and coverage that it had promised Water Well by contract that it would provide.

¶ 24. I dissent as Water Well, a party to the insurance contract, should be allowed to present facts to the court relevant to the issue of whether a policy of insurance provides coverage. It is absurd to allow an entity that has no privity of contract to dictate whether the contract provides defense and coverage.